THE INTERNATIONAL WRECKING & TRANSPORTATION COMPANY v. HENRY MCMORRAN.

73  467
119  545

*Chattel mortgages—Neglect to file—Corporations—Good-faith purchaser—Knowledge of officers—Special questions to jury.*

1. There is no legal identity between individuals and a corporation which will prevent it from becoming a purchaser in good faith from one of its members.

2. There can be no doubt that keeping a chattel mortgage from record operates as a practical fraud on persons who become interested as stockholders in property which they have no reason to suppose incumbered.

3. The statute gives the right to put specific questions to the jury for the very purpose of enabling the court to know whether in finding generally they have properly considered the neces-

sary elements of the finding. The general verdict must yield to the special findings; and not the special findings to the general verdict. *Beecher v. Galvin*, 71 Mich. 391 (head-note 3).

4. A chattel mortgagee is not the absolute owner of the property, and is bound to apply and account for it legally, and has no greater interest than the amount of his security. Property destroyed by his fault is the same as appropriated for its value.

Error to Wayne. (Reilly, J.) Argued January 15, 1889. Decided January 25, 1889.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Moore & Moore*, for appellant, contended:

1. A corporation that at its inception purchased property in good faith for a valuable consideration without notice is not chargeable with knowledge of an incumbrance known only to the seller, whose position as seller would be unchanged even if he became an incorporator.

2. The mere fact that a president, director, or any officer of a corporation has knowledge of a fact does not charge the corporation with notice; citing *Winchester v. Railroad Co.*, 4 Md. 231; *Miller v. Railroad Co.*, 24 Barb. 321; *Shaw v. Clark*, 49 Mich. 384; *Foundry v. Dart*, 26 Conn. 376; *Bank v. Payne*, 25 Id. 444; *Bank v. Cornen*, 37 N. Y. 320; *Bank v. Davis*, 2 Hill, 463; *Bank v. Savery*, 82 N. Y. 307.

*F. H. Canfield*, for defendant, contended:

1. As Murphy was president and general manager of the company, and acted for it in making the alleged purchase, his knowledge of the existence of the defendant's mortgage was notice to the company; citing Wharton, Agency, §§ 177, 184; *Coal Co. v. Coal & Iron Co.*, 16 Md. 456; *Bank v. Cushman*, 121 Mass. 490; *Suit v. Woodhall*, 113 Id. 391; *Bank v. New Milford*, 36 Conn. 93; *Smith v. Board*, 38 Id. 208; *Bank v. Davis*, 2 Hill, 451; *The Distilled Spirits*, 11 Wall. 356; Wade, Notice; §§ 675, 682; 1 Evans, Agency, 200; *Russell v. Sweezey*, 22 Mich. 235; *Emerson v. Atwater*, 7 Id. 12.

CAMPBELL, J. Plaintiff, a Canadian corporation, sued defendant for the taking and conversion of a large amount

of apparatus, chiefly used in connection with wrecking business on the lakes and rivers between Michigan and Canada. This property was worth about $25,000, and was taken without leave by defendant from the possession of plaintiff in the summer of 1886. Although the record gives what purports to be the substance of the testimony on trial, there are several details omitted which would have aided us materially in dealing with some parts of the case. In their absence, we shall refer to so much of the record as will enable us to pass on some questions meeting us in the more important parts of the controversy.

The property was taken by McMorran under color of an instrument made in April, 1882, whereby he and one Harrington agreed to sell to S. A. Murphy for $29,000 the apparatus, tools, and outfit of the Port Huron Wrecking Company. Of this sum $1,000 made up the cash payment at that date. The remainder of the price was made payable as follows: $2,000 to be paid June 1, to take up a note of McMorran's; and $26,000 in four notes, for $5,000 in six months, $6,000 in twelve months, $7,000 in eighteen months, and $8,000 in two years, with 6 per cent. interest. The agreement contained a chattel mortgage clause, providing for 60 days' notice of sale. The entire mortgage was thus to mature within two years from date, and was made to secure the payment of the notes named. All the amounts were paid absolutely, except the notes of $7,000 and $8,000. These were paid by Murphy by other notes, and acceptances given in lieu of them, and were taken up. This mortgage was never filed in accordance with the statute. As the mortgage refers to the notes, and to nothing else, by name or distinct reference, a serious question arises whether the mortgage was not extinguished when the notes were given up. Although this point appears in the record, it is not so clearly pre-

sented in the argument that we care to discuss it. The court below charged the jury on the subject, but the instruction was so concise that without further explanation it perhaps did not give the jury such definite ideas as to how a payment is to be made out as to enable them to deal satisfactorily with the question. The fact that more than two years after the notes matured expired before McMorran set up a claim to the property has some significance. We do not know what testimony may have been put in that the record does not disclose, and we do not feel satisfied that we should do justice if we passed upon the matter.

In October, 1882, Murphy sold this property to the plaintiff, which has since continued in business, and used this and other wrecking material for its work. The testimony of the sale, and its terms, is not practically contradicted. But the testimony indicates such an intimate relation between Murphy and plaintiff in these transactions as to raise important questions as to substantial identity of interests. The court below, while holding that a purchase in good faith would protect plaintiff from the unrecorded mortgage, also told them that knowledge by Murphy as president and general manager in control of the business would be their knowledge, and defeat their protection as purchasers without notice. This instruction was broader than the rules warrant. Plaintiff did not exist and had no business to manage until it was organized, and there was some testimony indicating that in forming it there were persons interested and contributing as stockholders who had no such knowledge, and who in arranging for the purchase from Murphy, acted in perfect good faith. There is no legal identity between individuals and a corporation which will prevent it from becoming a purchaser in good faith from one of its members. There can be no doubt that keeping a chattel

mortgage from record operates as a practical fraud on persons who become interested as stockholders in property which they have no reason to suppose incumbered. In *Young v. Iron Co.*, 65 Mich. 111 (31 N. W. Rep. 814), this Court made some reference to the protection to be given to such persons who bought what purported to be unassessable stock without notice of any reason why it should be assessed. There is great reason for not confounding the corporation partly made up of such members with an officer who in his private capacity commits a fraud upon it, or sells it property with no notice of infirmity of title. The present case should have been submitted to the jury upon the question whether the relations of Murphy were such as to indicate such a substantial identity as to make the company practically one of his own agencies, and not an independent organization, dealing with him as it might deal with any third party. It must not be forgotten that the mortgagee is himself at fault for not recording his mortgage, and that if he knew that this company had possession of and claimed the property some duties were laid upon him concerning future dealings with Murphy personally which might prejudice the plaintiff's interests. The assignments of error do not raise, and we do not decide, the measure of these duties, or the extent of his responsibility.

The defendant seized and carried away or otherwise dealt with considerable property which is claimed, and which there was evidence to show, was not in the list of articles bought of the Port Huron parties and mortgaged to McMorran. He, however, testified that it all belonged together. This issue became very material. Plaintiff submitted five questions for the jury, aimed at getting specific findings on the destruction of a hawser, and the purchase from other parties of the disputed articles. The court below properly told the jury that plaintiff was

entitled to recover for anything taken and not covered by the mortgage, but told them they need not answer these questions if they found that no property was taken that was not covered by the mortgage. They found it was all covered, and did not answer the questions.

This was erroneous. The statute gives the right to put specific questions to the jury for the very purpose of enabling the court to know whether in finding generally they have properly considered the necessary elements of the finding. The general verdict must yield to the special findings, and not the special findings to the general verdict. It is also to be considered that a chattel mortgagee is not the absolute owner of the property, and is bound to apply and account for it legally, and has no greater interest than the amount of his security. Property destroyed by his fault is the same as appropriated for its value.

The judgment must be reversed, with costs, and a new trial granted.

SHERWOOD, C. J., and CHAMPLIN, J., concurred with CAMPBELL, J.

MORSE, J. I can find no error in this case, except in the refusal of the court to submit the special questions to the jury. For that reason I concur in the reversal.

LONG, J., did not sit.