GOLL & FRANK COMPANY et al., Appellees, v. GEORGE
W. MILLER et al., Appellants.

1. **Chattel Mortgage:** WITHHOLDING FROM RECORD: FRAUD UPON
CREDITORS: SUBSEQUENT SALE. The defendant gave to a bank three
successive mortgages upon his stock of goods, which mortgages, by
mutual agreement, were withheld from record. Subsequently the
defendant, being in failing circumstances, gave to the bank a bill of
sale for the stock, in satisfaction of the mortgages, and the bank took
possession of the goods. In the meantime, the plaintiffs, having no
notice of the mortgages, sold to the defendant goods on credit, which
were not paid for at the time the bill of sale was made to the bank.
*Held*, that the agreement that the mortgages should not be recorded
rendered them fraudulent as to the plaintiffs, and that the bill of sale
taken in satisfaction of the mortgages was fraudulent also, and that
the plaintiffs were entitled to priority over the bank in the distribu-
tion of the proceeds of the property.

2. ———: ———: RIGHT TO RELY ON RECORD. Persons who are about
to sell goods to a merchant on credit are not required to look beyond
the proper records for the purpose of discovering mortgages upon his
stock.

3. **Creditor's Bill:** PRACTICE: STIPULATION: WAIVER. While it is true
that a creditor's bill in equity can not ordinarily be maintained until
the creditor has secured a lien upon the property, and that no lien is
created by garnishment, yet, where several creditors had obtained
judgments against a common debtor, and had, upon execution, gar-
nished certain persons to whom the debtor had transferred his stock
of goods, and all the parties in interest stipulated that an action in
equity should be commenced by the plaintiffs to settle the matters in
controversy, and such action was brought accordingly, the garnishees
being made paries defendant, *held*, that the latter could not be heard
to object to the form of the action, especially where such objection
was made for the first time on appeal.

4. **Appeal:** UNNECESSARY RECORD: COSTS. Where the appellant's
abstract is a fair presentation of the evidence, but the appellee files
an unnecessarily long amendment thereto, and then, without warrant,
denies that the abstract and the amendment contain all the evidence,
thus making a transcript necessary, the cost of such transcript, and
of so much of the amendment as is superfluous, will be taxed to the
appellee, though the judgment is affirmed.

*Appeal from Clay District Court.*—HON. LOT THOMAS,
Judge.

MONDAY, JANUARY 30, 1893.

THIS is an action in equity, and it involves the
rights of the creditors of G. W. Miller to priority in
the distribution of the proceeds of certain personal
property.   There was a full hearing on the merits, and
a decree for the plaintiffs.   The defendants appeal.—
*Affirmed.*

Cory & Bemis and C. C. Nourse, for appellants.

Parker & Richardson, for appellees.

ROTHROCK, J.—I.   About the year 1880, the defend-
ant G. W. Miller embarked in the mercantile business
at Spencer, in Clay county.   He had about

1. CHATTEL mort-
gage: with-
holding from
record: fraud
upon credit-
ors: subse-
quent sale.

one thousand dollars of capital with
which to commence operations.   He had
two partners.   About the year 1885 he
bought out one of his partners, and paid
him for his interest in the firm the sum of two thousand
dollars.   In 1887 he bought out the other member of
the firm, and paid him five thousand, five hundred dol-
lars in cash.   He continued in business until the six-
teenth day of June, 1890, at which time he was indebted
to the defendant J. L. Nicodemus for borrowed money
and interest, and rent of his store building, amounting
in the aggregate to over thirteen thousand dollars.   On
that day he executed a bill of sale to Nicodemus, by
which he transferred to him all of his goods and mer-
chandise, and his promissory notes and accounts.
The bill of sale is absolute in form, and recites that it
was given in satisfaction of a mortgage previously
given on the same property.   Nicodemus took posses-
sion of the property under this bill of sale, and was

proceeding to dispose of the same, when the plaintiffs commenced actions and obtained judgments against Miller, and issued executions, and garnished Miller and his agents and employees, who had said property in charge. The plaintiffs are wholesale merchants, and Miller was indebted to them for goods purchased for the store. The answers of the garnishees were taken, which showed that they were not indebted to Miller, and that they had none of his property under their control.

The plaintiffs are composed of nine partnerships and corporations who had sold goods to Miller, and each one of their claims had been reduced to judgment by separate proceedings. They filed pleadings controverting "the answers of the garnishees, and the parties entered into a stipulation, which, as appears from the appellant's abstract, was as follows: 'The stipulation shows that the plaintiffs and the defendants agreed that an action in equity be commenced by the plaintiffs to settle the matters in controversy, arising in the several cases of the plaintiffs against G. W. Miller, and these defendants as garnishees, upon the pleadings, controverting the answers given by said garnishees in said garnishment proceedings, and that said proceedings be continued until the termination of this suit." In pursuance of this stipulation, this action was commenced. All the wholesale merchant creditors united as plaintiffs, and set forth in the petition the grounds upon which they claimed that they were entitled to priority over the defendant Nicodemus.

We will now proceed to state the grounds upon which the plaintiffs contend that they are equitably entitled to priority. It appears that the defendant Nicodemus is a resident of the state of Maryland. He is the owner of the Clay County Bank, at Spencer, in this state, and said bank has been managed and its business conducted, by one H. N. Smith, cashier.

When Miller purchased the interest of his partners in business, he borrowed money of Nicodemus. These loans appear to have been at first made by Nicodemus personally, and no security was taken for the money. These loans were continued until the aggregate amount became quite large, and the matter appears to have been taken control of by the bank, and security was demanded, and Miller executed mortgages upon his stock of goods, notes and accounts to secure the indebtedness. There is conflict in the evidence as to when the first mortgage was given. Our reading of the evidence leads us to the conclusion that it is shown by a fair preponderance thereof that the first mortgage was given early in the year 1888. In the month of October, 1889, this mortgage was renewed by another in the sum of seven thousand, five hundred dollars, and on the twentieth day of March, 1890, another renewal was effected. At this time the debt had increased so that the renewed mortgage was taken for twelve thousand, two hundred and twenty-two dollars. This last mortgage was held by the bank until June 16, 1890, when Miller executed to Nicodemus the bill of sale above referred to. The several mortgages held by the bank were not placed on record, with the exception of the last one, and that was not filed for record until June 16, 1890, just before the execution of the bill of sale.

It is claimed by the plaintiffs that it was understood and agreed between the bank and Miller that these mortgages should not be recorded. It is conceded by the bank that there was such an arrangement as to the mortgages taken prior to the one which was dated March 20, 1890. It is strenuously contended by Smith, the manager of the bank, that the omission to record said mortgage was the result of oversight, and was not in pursuance of any arrangement or understanding with Miller. We think the evidence fairly shows that

there was the same arrangement and understanding with reference to this mortgage that there was with reference to those that preceded it. It is true that Smith testified as a witness that the intention was to put it on record, but we think, when his whole evidence is considered, in connection with the facts and circumstances surrounding the transaction, it must be found that there was more than mere oversight in the matter of putting the instrument on record. The following is part of Smith's testimony on his cross-examination: "The intention was to put it on record in a very short time. It was my intention, if he did not pay up some of the indebtedness, that I would close him up. The mortgage was not recorded because I overlooked it. It was simply an oversight. It was an oversight and negligence on my part, not doing what I should have done. I simply put it off against my better judgment, from time to time. No, it was not a postponement of recording it, the same as the first mortgage was, because in the first mortgage I guess there was an understanding that the first mortgage should not be recorded. The mortgage in March, 1890, was an entirely different one from the first one." The surrounding circumstances were that the mortgages previously given were by agreement withheld from record, and the parties to the transaction knew that whenever the bank placed the mortgage on record Miller's career as a merchant was at an end. He could not have bought goods on credit. All the property he had, aside from his stock of goods, did not exceed five hundred dollars in value. It can not be believed that any of the parties entertained the idea that Miller was such a master of finance that he could operate a country store with a mortgage of over thirteen thousand dollars on his stock. The plaintiffs sold the merchandise upon which their judgments are founded to Miller after the first mortgage was given,

and before the bill of sale was executed, without any knowledge of the existence of the mortgages. It is charged that the withholding of the mortgages from record was a fraud as to the plaintiffs, and this is the principal question in the case. There can be no doubt that the withholding of the mortgages from record, in pursuance of an agreement between the parties, could have but one object, and that was to maintain the credit of Miller, and lead parties with whom he dealt to give credit to him in the belief that he was not a chattel mortgaged merchant. In such a case it is well settled that the mortgaged can not be permitted to insist on the validity of his mortgage, as against those who have given credit to the mortgagor under such circumstances. Such a transaction is fraudulent as to the other creditors. It is provided by section 1923 of the Code that "no sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides." It was held in *Fox v. Edwards*, 38 Iowa, 215, that the term "existing creditors" is not limited to those who were creditors when the sale was made, but that it applies equally to those who became creditors before the possession of the property was changed, the bill of sale recorded, or notice given. That such a transaction is fraudulent as to creditors, see *Crippen v. Fletcher*, 56 Mich. 386, 23 N. W. Rep. 56; *Talcott v. Crippen*, 52 Mich. 633, 18 N. W. Rep. 392; *Brown v. Brabb*, 34 N. W. Rep. (Mich.) 403; *Thompson v. Van Vechten*, 27 N. Y. 582; *Blennerhassett v. Sherman*, 105 U. S. 117; *Stewart v. Beale*, 68 N. Y. 629; *Hilderburn v. Brown*, 17 B. Mon. 779;

*Standard Paper Co. v. Guenther,* 67 Wis. 101, 30 N. W. Rep. 298.

There are several grounds upon which it is claimed by counsel for the defendants that the rule above announced should not be applied to this case. The principal contention turns upon the alleged fact that the taking of the bill of sale on the sixteenth day of June was an entirely new transaction; that the debt to Nicodemus was an honest obligation; and that, being a *bona fide* creditor, he had a right to secure his claim, even if it resulted in the bankruptcy of Miller. This is true if the bill of sale was the only act of Nicodemus which prevented the plaintiffs from securing their claims. But the bill of sale could not purge the several mortgages of their fraudulent character. The mischief was done by withholding the mortgages from record. It is fair to presume that, if the mortgages had been placed on record, the plaintiffs would not have been creditors of Miller. It is true, as claimed by the appellants, that a mortgage withheld from record is valid between the parties, and there may be creditors who can not complain of the failure of another creditor to record a mortgage. We are cited to the case of *Letts-Fletcher & Co. v. McMasters,* 83 Iowa, 449. It is claimed that, under the rule in that case, the taking of the bill of sale, being an independent transaction, and no claim being made by Nicodemus under the mortgages, the relation of the parties is the same as though the mortgage had not been given. The cited case is not authority upon such a state of facts as this record presents. There was no evidence in that case that the mortgage was withheld from record by an agreement to do so, and that the creditors, seeking to overthrow the mortgage, gave credit to the debtor while the unrecorded mortgage was held by the mortgagee. And *Standard Paper Co. v. Guenther, supra,* is cited as being different in its facts.

II. It is further claimed by counsel for the appellants that the evidence shows that the plaintiffs sold their

2. ——: ——: right to rely on record.

goods relying upon Miller's own statements, and without making investigation as to his financial standing, and that they made no inquiry as to whether there was any incumbrance on the goods. It appears to be claimed that the plaintiffs, before extending credit to Miller, should have inquired of certain business men, bankers, real-estate men, money lenders, and cashiers of banks, residing and doing business in Spencer, who knew that Miller was in debt and had mortgaged his stock of goods. The law imposes no such requirement upon a person extending credit to another. Under section 1923 of the Code the mortgages were invalid as to the plaintiffs unless they had notice of them. It is true that where a person in such case is "conscious of the means of knowledge, and does not use them," he may be said to have notice; and he will be charged with notice if he designedly abstains from making inquiry for the purpose of avoiding knowledge. *Allen v. McCalla*, 25 Iowa, 464. No such state of facts is to be found in this case. On the contrary, the record shows the following correspondence between one of the plaintiffs and H. N. Smith, the cashier of the bank:

"CHICAGO, February 14, 1889.

"DEAR SIR:—We would thank you to inform us hereon what you know concerning the integrity, financial standing, responsibility, and general reputation for promptness of G. W. Miller, and the same will be held strictly confidential.

"Yours, truly,
"KEITH BROTHERS & CO."

"He claims stock $22,000; indebtedness $11,500 to $12,000. We believe he has been prompt in meeting

VOL. 87—28

his bills for goods purchased, but complains now of slow collections, owing to a failure of crops last season.

"Yours,

"H. N. SMITH,

"February 15, 1889.                    Cashier."

While it was the right of Smith to decline to answer this letter, yet, as he did answer it, why did he not frankly say that the indebtedness of Miller was in the form of a mortgage upon his stock of goods to the bank of which he was cashier. It would be a most violent presumption to hold that, if he had done so, Keith Bros. & Co. would have extended credit to Miller.

III. It is further insisted that this action will not lie because it has been held by this court that a credi-

3. CREDITORS' bill: practice: stipulation: waiver.

tors' bill in equity can not be maintained until the creditor has obtained a lien on the property, and that no lien was created by a garnishment of the mortgagee. It was held in *Mooar v. Walker*, 46 Iowa, 165, in *McConnell v. Denham*, 72 Iowa, 497, and in *Buck-Reiner Co. v. Beatty*, 82 Iowa, 353, that no lien was acquired by an attachment by garnishment of the person in possession of the property. In *Clark v. Raymond*, 84 Iowa, 251, it was further held, that an action in the nature of a creditors' bill in equity would not lie, before judgment, upon an attachment by garnishment of a person owing money to, or having property of, the debtor in his possession. See, also, *Boyle v. Maroney*, 73 Iowa, 70. And the same rule was again announced in *Raymond's case*, upon a second appeal. See 86 Iowa, 661. But we have a case here where judgments were obtained before the garnishments were served; and the stipulation made by the parties authorized an action in equity to be brought, which was done. The defendants answered, and, so far as appears, no objection was made in the court below as to the form of the

action.  The court had jurisdiction of the subject-
matter.  The plaintiffs had the right to assert their
claims to priority in some form of action, and objection
to mere matter of form can not be made for the first
time in this court.  The usual method of testing the
validity of chattel mortgages and sales of personal
property by creditors, on the ground of fraud, is to levy
an execution or attachment on the property, and
indemnify the sheriff, and compel the alleged fraudu-
lent purchaser or mortgagee to abandon his claim, or
replevin the property, or sue for damages, and try the
question in an action at law; but we do not think that
course of procedure is exclusive, especially where the
parties agree to test the question by an action in equity.

IV. The appellees attack the record in this court
by a most voluminous motion, and arguments.  All of
this motion, but the fourth ground thereof,
was overruled before the submission of
the case.  That ground of the motion
was submitted with the case.  It is a demand that the
appeal be dismissed, because certain parts of the evi-
dence, naming them, are not contained in the appel-
lants' abstract, and because all of the evidence offered
on the trial is not set out in the appellants' and appel-
lees' abstract.  It is not necessary that a ruling be
made on the motion, as we affirm the decree of the
district court.

4. APPEAL: un-
necessary re-
cord: costs.

The appellants filed a motion to tax the costs of
the abstract of the appellees, and of the transcript
made necessary thereby, to the appellees, on the ground
that both were unnecessary, and this motion is sub-
mitted with the case.  The abstract filed by the appel-
lants contained one hundred and thirty-five pages.  It
is a fair presentation of the evidence, and in fact is
much more voluminous than necessary.  At the close
of the introduction of the plaintiffs' evidence, the
defendants filed a written paper, styled "Exceptions to

the Evidence of Certain Witnesses." This paper is set out at length in the abstract, and contains thirteen pages. The plaintiffs filed a like paper, which, as abstracted, contains nineteen pages. Here were thirty-two pages which were wholly unnecessary, and should have been omitted from the abstract. The abstract of the evidence itself, by proper exceptions, directs our attention to all proper objections. The appellees' abstract was almost entirely unnecessary. It is a document of sixty-one pages. The first sixteen pages appear to be a copy of the pleadings without abstracting. The remaining pages are mostly made up of corrections of the abstract of the appellants. This abstract should not have contained to exceed ten pages, and the appellees should not have stated in their abstract that the two abstracts were not abstracts of all the evidence. The abstract of the appellants was really all that was necessary to present the whole case. The motion of appellants to tax the costs of the transcript to appellees is sustained, and all but ten pages of the appellees' abstract will be taxed to appellees. It is provided by chapter 35, Laws 1888, that "no transcript of the record need be forwarded to the supreme court until a denial of appellants' abstract of the record has been served; and, if no denial shall be made, no transcript of the record shall be required. If such denial shall be entered without good and sufficient cause therefor, the costs for such transcript of the record shall be taxed to the party making the denial." We think that there was not sufficient cause for a denial in this case. The statute is intended to encourage the presentation of cases in this court without incumbering the records with transcripts, and we think it should have been done in this case. If the case had been properly abstracted and presented, it would have required much less of the time of this court to dispose of it.

The decree of the district court is AFFIRMED.