FALKER & STERN *et al.*, Appellants, v. B. E. LINEHAN *et al.*, Appellees.

1. **Chattel Mortgages:** DELAY IN RECORDING: FRAUD ON CREDITORS. Where a mortgage on a stock of goods is withheld from the records in pursuance of an arrangement between the parties thereto, for the purpose of maintaining the credit of the mortgagor, the mortgagee will not be permitted to insist upon the validity of his mortgage as against those who have in the meantime given credit to the mortgagor, and who would not have done so had the mortgage been recorded.

88   641
90   741
88   641
91   350
88   641
94   218
88   641
d95   663
88   641
97   105
88   641
104   518
88   641
106   500
88   641
d107  310
88   641
j125  128
88   641
138   325

2. ———: ———: ———: NOT PURGED BY NEW BILL OF SALE.  A bill of
sale made by the mortgagor in such case to the mortgagee for the
mortgaged goods, in security or payment of the mortgage debt, at a
time when such subsequent creditors are pressing their claims, is
also fraudulent as against such creditors.

3. **Assignment for Benefit of Creditors :** PREFERENCES: INVA-
LIDITY.  Where a party in failing circumstances, and about to make
a general assignment for the benefit of his creditors, makes a bill of
sale of a part of his property to one creditor, who knows of his
intention to make a general assignment, and the two instruments are
so connected in time, intention and circumstances, as to constitute
one transaction, they will together constitute an assignment with
preferences, and be void, under section 2115 of the Code.

4. **Equitable Proceedings to Collect Judgment:** PRACTICE.
Where one has obtained judgment against his debtor, he may, under
sections 3150–3153 of the Code, maintain an equitable action against
one who holds the property of the debtor under a void bill of sale, to
subject such property to the payment of his judgment, although he
has as yet no lien on the property, and the judgment debtor is not
made a party.  A lien upon such property may be obtained, under
section 3152, by serving notice of the proceeding and a copy of the
petition upon the defendant holding the property.

*Appeal from Dubuque District Court.*—HON. **J. L.**
HUSTED, Judge.

SATURDAY, MAY 27, 1893.

THE plaintiffs, judgment creditors of the defend-
ant, H. D. Kelley, who is insolvent, bring this action in
equity to declare a certain chattel mortgage and bill of
sale executed by the defendant Kelley to the defendant
Linehan void, and to subject money in the hands of
the defendant J. J. Dunn, derived from the sale of
part of the mortgaged property, to the payment of
their judgments.  Judgment was entered, dismissing
the plaintiffs' bill, and for costs, from which the plain-
tiffs appeal.  The issues and facts appear in the opin-
ion.—*Reversed.*

*Henderson, Hurd, Daniels & Kiesel,* for appellants.

*Longueville & McCarthy,* for appellees.

GIVEN, J.—There is no dispute as to the following facts: For some years next preceding June 10, 1889, the defendant Kelley was engaged in the retail grocery business in the city of Dubuque, having three stores, one at number 737 Main street, one at 1179 Iowa street, and one at number 5 South Locust street. On May 16, 1888, the defendant Kelley executed a chattel mortgage to the defendant Linehan on all of the goods and fixtures in said stores, "and all additions that may be hereafter made to said stocks," and on a delivery horse and wagons, to secure an existing indebtedness of one thousand, four hundred dollars, for borrowed money. This mortgage was not filed for record until June 8, 1889, and the plaintiffs had no knowledge thereof until the same was so filed. Betwen the time said mortgage was executed and the day it was filed for record, the plaintiffs, wholesale dealers in other states, sold goods on credit to the defendant Kelley, and on June 8 and 12, 1889, obtained judgments for the balances due them, respectively. On June 12 and 14, 1889, notices of garnishment were served on the defendant Linehan, on each of said judgments, and his answers afterwards taken. It does not appear that any further proceedings were had under the garnishment. On Sunday, June 9, 1889, the day following the filing of said mortgage for record, there was a conference between Kelley and some of his creditors, including one W. J. Brown, general manager for Mr. Linehan, who was acting for him. Mr. Linehan was at the place of meeting, but there is a dispute as to how long he remained, and what took place in his presence. There is no dispute, however, but that the opinion was generally expressed that Kelley should make a general assignment for the benefit of all his creditors. At the request of Mr. Linehan, made to Kelley at the place of the conference, Kelley went to Linehan's house that Sunday evening, between

9 and 10 o'clock, where he met Mr. Linehan, Philip
Ryder, W. J. Brown, and J. C. Longueville, attorney
for Mr. Linehan. Soon after 12 o'clock, the defendant
Kelley executed and delivered a bill of sale, prepared
by Mr. Longueville, to the defendant Linehan, of the
goods and fixtures at number 1179 Iowa street, and
certain other property not included in the mortgage,
and Linehan took possession of the property that
same night. Soon after executing the bill of sale, Mr.
Kelley went to Mr. Longueville's office, where he
executed a general assignment to Philip Ryder for the
benefit of all his creditors, which Mr. Longueville also
prepared. A receiver was afterwards appointed, and
he sold part of the property covered by the mortgage
and bill of sale, realizing therefrom the six hundred
dollars now in the hands of the defendant Dunn, as
clerk of the court, and which the plaintiffs ask to have
applied upon their judgments.

I. The appellants allege and maintain that said
chattel mortgage was withheld from record, in pursu-
ance of an agreement between Kelley and
Linehan, for the purpose of enabling
Kelley to buy goods on credit, and that it
is, therefore, void as to the plaintiffs.
Appellee Linehan denies that there was such an agree-
ment or purpose. Kelley testifies in his deposition as
follows: "At the time I gave the mortgage, Mr.
Linehan said he would be obliged to record it. I
objected, saying that such action would injure my
credit. He then said he would keep it in his safe. He
said to record it would tend to injure my credit." On
cross-examination he states: "I had a conversation
with defendant Linehan, about not recording the mort-
gage, a day or two after it was given, and again had a
conversation with him about it a few months later, at
his store, when he said he thought he would have to
record it, and raise money on it. I said, if he should

1. CHATTEL mort-
gages: delay
in recording:
fraud on
creditors.

do so, it would injure my credit, and I could not buy goods to advantage. Our talks were always private, no one else being present." The defendant Linehan was asked upon his examination, in substance, if these conversations had occurred, and he answered: "Not of that kind. Nothing was said between us about keeping it from record." He says: "I didn't record the mortgage, because he came to me and wanted to borrow money. He was crying, and I was going away. I think I got the mortgage at my store, and left it there. I may have got the mortgage at Mr. Deery's office. I don't remember. It was long since." This is the only explanation Mr. Linehan attempts to make, why he did the very unusual thing of keeping that mortgage from record for more than a year. He knew that Kelley was carrying on business in the usual way of merchants; that, on the strength of his business and goods on hand, he was buying on credit; and he knew, as every business man knows, that the recording of that mortgage would at once close the doors of Kelley's stores. But one conclusion can be reached from the evidence before us, and that is, that Kelley desired, and Linehan consented, to hold the mortgage from record, that Kelley might obtain credit, and continue in business. A number of authorities are cited to show the effect of such a state of facts, but as this case is identical in its facts, so far as the points in dispute are concerned, with the recent case of *Goll & Frank Co. v. Miller*, 87 Iowa, 426, we do not refer to any other. In that case it was found, as we find in this, that the mortgage was withheld from record in pursuance of an arrangement between the parties which "could have but one object, and that was to maintain the credit of Miller, and lead parties with whom he dealt to give credit to him in the belief that he was not a chattel mortgage merchant." It is further said in that case: "In such a case it is well

settled that the mortgagee can not be permitted to insist on the validity of his mortgage, as against those who have given credit to the mortgagor under such circumstances. Such a transaction is fraudulent as to the other creditors." Following this case, and those cited therein, we hold that appellee Linehan is not entitled to the money in question, as against these plaintiffs, by virtue of said chattel mortgage.

II. In the case of *Goll & Frank Co. v. Miller*, 87 Iowa, 426, a bill of sale and possession of the property were

2. —: —: —.    given, as in this case, and it was claimed, as these appellees now claim, that taking the bill of sale was an independent transaction, and that the relation of the parties is the same as if no mortgage had ever been taken. It was held in that case that the mischief was done by withholding the mortgages from record, and that the bill of sale could not purge the mortgages of their fraudulent character. For the reason given in that case we hold that the bill of sale is void as against these plaintiffs.

III. The appellants contend that the bill of sale and assignments should be considered as one instru-

3. ASSIGNMENT
for benefit of
creditors:
preferences:
invalidity.

ment, and held to be void because of the preference given to appellee Linehan. We are entirely satisfied from the evidence that it was the intention of H. D. Kelley, at, and at all times after, the conference on Sunday, to make a general assignment for the benefit of all his creditors alike, and that the creditors present, including Mr. Brown and Mr. Linehan, so understood. These creditors, other than Linehan, acted and relied upon that understanding, while he induced Kelley to give the bill of sale. We are in no doubt but that Linehan knew at the time he took the bill of sale that Kelley was insolvent, and that it was his intention to at once make a general assignment of all his property for the benefit of his creditors. Here we have, not

only an intention upon the part of the debtor to make a general assignment, but a knowledge of that fact on the part of the creditor at the time he took the bill of sale. The execution of the two instruments was so connected in time, intention, and circumstances as to constitute one transaction, namely, a general assignment of all the debtor's property for the benefit of creditors, with preference to appellee Linehan, and is, therefore, void. Code, section 2115; *Burrows v. Lehndorff*, 8 Iowa, 96; *Cadwell's Bank v. Crittenden*, 66 Iowa, 237; *Moore v. Church*, 70 Iowa, 208; *Van Patten v. Burr*, 52 Iowa, 518; *Perry v. Vezina*, 63 Iowa, 25; *Farwell v. Jones*, 63 Iowa, 316; *Clement v. Johnson*, 85 Iowa, 566.

IV. Appellee Linehan contends that the plaintiffs are not entitled to any relief in this action, for the reason that they have no lien on, or interest in, the property described in the mortgage and bill of sale, and because their remedy is adequate at law. We have seen that prior to the commencement of this action each of these plaintiffs obtained judgment against H. D. Kelley, and that executions were issued thereon, and appellee Linehan garnished; also, that a receiver was appointed, and that he sold part of the property, realizing therefrom the six hundred dollars now in the hands of the defendant Dunn, as clerk of the district court, which the plaintiffs ask to have applied to their judgment. While it is true that the plaintiffs had no lien upon this property, or the proceeds thereof, prior to the commencement of this action, they are certainly entitled to have it subjected to the payment of their judgments, if the mortgage and bill of sale were fraudulent, as alleged. This proceeding is under sections 3150 to 3153 of the Code, inclusive. Sections 3150 and 3152 are as follows:

"Section 3150. At any time after the rendition of a judgment, an action by equitable proceedings may

be brought to subject any property, money, rights, credits, or interest therein, belonging to the defendant, to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants."

"Section, 3152. In the case contemplated in the two preceding sections a lien shall be created on the property of the judgment debtor, or his interest therein, in the hands of any defendant or under his control, which is sufficiently described in the petition, from the time of the service of notice and copy of the petition on the defendant holding or controlling such property, or any interest therein."

It is clear, from these statutes and facts, that plaintiffs were entitled to commence this action, though they had no lien or interest in the property in question at that time, and that under said section 3152 they acquired a lien thereon by the commencement of the action and service of notice. It is said in argument that this kind of action must be against the judgment debtor, and those who are endeavoring to aid him in covering up or concealing his property may be brought into the action secondarily, and that no relief is asked against Kelley, and therefore relief can not be granted against his mortgage. The plaintiffs have their judgments against Kelley, and desire no further relief as to him. Their action is properly against those charged with concealing or covering up his property. We think the case is strictly within the provisions of the sections of the Code quoted, and that the district court erred in dismissing the plaintiffs' petition.

The judgment and decree of the district court are reversed, and the case will be remanded for judgment and decree in conformity with this opinion. RE-VERSED.