BAKER v. PARKHURST.

GARNISHMENT — FRAUDULENT CONVEYANCES — LIABILITY OF GAR-
NISHEE.

> By an arrangement between the parties to an unfiled chattel
> mortgage and a prospective purchaser of a portion of the
> property covered thereby, the property to be sold was released
> from the mortgage, the sale effected, and the purchase price
> applied upon the mortgage debt. Thereafter the proceeds
> were garnished by one who had extended credit to the mort-
> gagor in ignorance of the mortgage. *Held*, that, in view
> of 3 How. Stat. § 8091, providing that, if any garnishee shall
> have received and disposed of any property of the principal
> defendant which was held by a conveyance or title void as to
> defendant's creditors, he may be adjudged liable on account
> thereof, the garnishee was liable, since the mortgage was
> void as to plaintiff.

Error to Manistee; McMahon, J. Submitted January
6, 1899. Decided March 23, 1899.

Garnishment proceedings by William F. Baker against
L. K. Parkhurst, J. W. Parkhurst, and James M. Reed,
composing the firm of L. K. Parkhurst & Co., as gar-
nishees of Thomas R. Welsh. From a judgment for de-
fendants, plaintiff brings error. Reversed.

*Dovel & Smith*, for appellant.

*Judkins & Perkins*, for appellees.

LONG, J. The plaintiff resides in Manistee, and is en-
gaged in the lumber business. In April and May, 1897,
Welsh, the principal defendant, lived at Reed City, and
owned a mill plant, machinery, lumber, etc. During said
months he purchased lumber from the plaintiff on credit.
He also during this time purchased lumber on credit from
the R. G. Peters Salt & Lumber Company. These debts

not being paid by Welsh, suits were commenced against
him by these firms, and judgments obtained thereon in
both cases.   Garnishee proceedings were also commenced
in both cases against L. K. Parkhurst & Co., who were
then engaged in banking and other business at Reed City.
The garnishees filed disclosures denying liability.   Inter-
rogatories were then filed, served, and answered, and the
statutory issues were brought on for trial before the court
without a jury.   Judgments were rendered in favor of
the garnishee defendants in both cases, and, by stipula-
tion, the R. G. Peters Salt & Lumber Company case is to
abide the event of the present case.

The court below, at the request of the parties, found the
facts and conclusions of law.   From the findings, it ap-
pears that the bank was owned and controlled by L. K.
Parkhurst & Co., of which L. K. Parkhurst was presi-
dent, J. W. Parkhurst cashier, and James M. Reed a
stockholder; that, during the time this lumber was being
purchased, Welsh was indebted to L. K. Parkhurst & Co.
in the sum of upwards of $15,000, and that during this
time L. K. Parkhurst reported for mercantile agencies at
Reed City, and among others reported the standing of
Welsh, and recommended him as worthy of fair or good
credit, and gave him a rating of between $20,000 and $25,-
000, and continued to make these reports on Mr. Welsh
up to the spring of 1897; that in February, 1897, Welsh
was indebted to the garnishee defendants in the sum of
$18,000, represented by promissory notes, renewed from
time to time; that during that month he sold his residence
for $2,500, and applied the proceeds on his indebtedness to
L. K. Parkhurst & Co.; that on February 27, 1897, he
executed a real-estate mortgage covering all his real estate,
and a chattel mortgage covering all his personal property,
to the garnishee defendants, to secure the payment of the
balance of his indebtedness to them; that, in addition to
this, they also held as security certain policies of insurance
on the life of Welsh, amounting to $26,000; that, ap-
parently to avoid injuring the credit of Welsh, the chattel

mortgage was withheld from file until June 24, 1897, and the real-estate mortgage was given to the register of deeds of the county, with instructions to record it if anything came to his office for record affecting this property, otherwise not to record it; that Welsh remained in possession of the mortgaged property as apparent owner; that during the months of April and May, 1897, while these mortgages were withheld from record, and without knowledge or intimation of their existence, the plaintiff sold to Welsh considerable quantities of lumber on credit; that on July 23, 1897, the mill plant, machinery, etc., and everything belonging to the mill, were conveyed to W. E. Williams, a brother-in-law of Parkhurst, one of the garnishee defendants, by bill of sale, for the sum of $10,000; that this bill of sale was not filed until July 28, 1897, and during this time Welsh remained in possession as the apparent owner; and that the $10,000 on said purchase was paid to the garnishee defendants.

The court further found that:

"Parkhurst & Co. also agreed in this transaction to release the property which Williams had bought from the lien of their mortgage, and hold their claim against the lumber in the mill yard, and such property as was not included in the sale of Welsh to Williams. The balance due Parkhurst & Co. was $5,500, and the lumber and property covered by their mortgage, and not included in the sale to Williams, was not worth that amount. The price paid by Williams for the mill and machinery was a fair price, under all the circumstances. * * * The sale was a *bona fide* one. * * * It is clear, of course, that there was a perfect understanding between Parkhurst & Co., Welsh, and Williams, during the negotiations which led up to the sale by Welsh to Williams. All knew of, and took into account, the mortgages of Parkhurst & Co. It was understood that the amount which Williams paid for the plant should be applied upon Parkhurst & Co.'s mortgage upon the plant; that such part of the plant as Williams purchased should be released from the mortgage; and that Parkhurst & Co. should hold the balance of the property as security for the balance of their claim. The transfer of Williams' check from Welsh to

Parkhurst & Co. was intended as a payment of Welsh's indebtedness to that extent, and was so treated by a surrender of Welsh's notes to that amount. I am pleased to be able to say that, in my judgment, there is not a taint of fraud in any of the transactions involved in this case."

Exceptions were taken to some of the findings of fact and to the conclusions of law.

It is shown by the findings that the garnishee defendants kept their mortgages off the record and off the file, and that during that time the plaintiff's debt accrued, and that plaintiff had no notice or knowledge of the mortgages. This court has uniformly held that the withholding of a chattel mortgage from file is a fraud upon parties extending credit to the mortgagor during the time it is withheld, and in ignorance of it, and that such mortgages are void as to such creditors. *Fearey* v. *Cummings,* 41 Mich. 383; *Brown* v. *Brabb,* 67 Mich. 30 (11 Am. St. Rep. 549); *Buhl Iron Works* v. *Teuton,* 67 Mich. 628; *International, etc., Transportation Co.* v. *McMorran,* 73 Mich. 467. The same rule applies to real-estate mortgages. *Belcher* v. *Curtis, ante,* 1. The court below recognized this rule, and in his conclusions of law says:

"The claim made by plaintiff's counsel is that, as to plaintiff, these mortgages given by Welsh to Parkhurst & Co., not having been filed, were fraudulent and void; that, the plaintiff having sold lumber to Welsh while these mortgages were kept from record, the mortgages were of no validity, under the statute, for any purpose whatever, as against plaintiff. They further insist that the money received by Parkhurst & Co. (the $10,000) was received by them upon the mortgages, by reason of the mortgages, and therefore wrongfully, fraudulently, and that the money is the money of Welsh in their hands, and liable to garnishment. Counsel for the garnishee defendants admit that, as to the plaintiff, the mortgages were fraudulent and void; that, for instance, had the plaintiff levied upon the plant at any time before its sale to Williams, he would have been entitled to have the mortgages declared null and void. But they say, admitting that, as against the plaintiff, these mortgages were void, yet that fact would

not prevent Welsh from paying his indebtedness to Parkhurst & Co; there was a *bona fide* indebtedness existing long before and independently of the mortgages, and this Welsh could recognize and pay whenever he chose. Counsel admit that had Parkhurst & Co. foreclosed their mortgages, sold the property under them, and received the $10,000 in that way, the plaintiff would have a right to treat the money as the money of Welsh, and subject to garnishment; but counsel deny that a voluntary payment by Welsh of his indebtedness can have the same result."

The court then seeks to draw a distinction between this case and *Heineman* v. *Schloss*, 83 Mich. 156, and holds that the case is governed by *Folkerts* v. *Standish*, 55 Mich. 463. The court says further:

"There is nothing in the record to show that the transfer of the $10,000 from Welsh to Parkhurst & Co. was anything else than a payment *pro tanto* of the debt he owed them. The notes they held for that amount were surrendered, and Welsh received credit for the amount. The transaction was an honest one. * * * I am entirely satisfied that the transfer of the $10,000 from Welsh to Parkhurst & Co. was a payment upon his indebtedness to them. Parkhurst & Co. never received either the property mortgaged or the proceeds thereof by virtue of a 'conveyance void as to creditors.' The $10,000 was not transferred to them by any such conveyance. They received it as a payment upon the notes they held for money loaned to Welsh. This was a *bona fide* indebtedness, and a part of it was paid in a perfectly legitimate way."

Act No. 244, Pub. Acts 1889 (3 How. Stat. §§ 8059, 8091), provides:

" SEC. 2. From the time of the service of such writ, the garnishee shall be liable to the plaintiff to the amount of property, money, goods, chattels, and effects under his control belonging to the principal defendant, or of any debts due or to become due from such garnishee to the principal defendant, or of any judgment or decree in favor of the latter against the former, and for all property, personal and real, money, goods, evidences of debt, or effects of the principal defendant which such garnishee defendant holds by conveyance, transfer, or title that is void as to creditors of the principal defendant, and for the value

of all property, personal and real, money, goods, chattels, evidences of debt, or effects of the principal defendant which such garnishee defendant received or held by a conveyance, transfer, or title that was void as to creditors of the principal defendant; and such garnishee defendant shall also be liable on any contingent right or claim against him in favor of the principal defendant."

"SEC. 35. If any person garnished shall have in his possession any of the property aforesaid of the principal defendant which he holds by a conveyance or title that is void as to creditors of the defendant, or if any person garnished shall have received and disposed of any of the property aforesaid of the principal defendant which is held by a conveyance or title that is void as to creditors of the defendant, he may be adjudged liable as garnishee on account of such property, and for the value thereof, although the principal defendant could not have maintained an action therefor against him."

We think, when the court found the facts that "there was a perfect understanding between Parkhurst & Co., Welsh, and Williams during the negotiations which led up to the sale;" that "all knew of and took into account the mortgages of Parkhurst & Co.;" that "it was understood that the amount Williams paid for the plant should be applied on the Parkhurst & Co. mortgage upon the plant, that such part of the plant as Williams purchased should be released from the mortgage, and that Parkhurst & Co. should hold the balance of the property as security for their claim,"—it was in error in concluding, as matter of law, that the payment of the $10,000 was nothing more than a payment *pro tanto* of the debt owing by Welsh to Parkhurst & Co., and that Parkhurst & Co. never received the proceeds of the property covered by the mortgage by virtue of a mortgage void as to creditors.

The evidence is returned in the record, and such evidence supports the findings of fact made by the trial court; but the facts found do not support the conclusions of law reached by the court. Mr. Parkhurst was sworn as a witness, and testified substantially that Williams was told

that the real-estate mortgage was not recorded; that it was arranged between the parties that Parkhurst & Co. should release their security under the chattel mortgage on the machinery; that this was done, and the mortgage was then filed, so that it might cover the balance of the personal property, securing the remaining debt of Parkhurst & Co. We think that the facts lead inevitably to the conclusion that, by the arrangement that Parkhurst & Co. should release their mortgage on the property sold, Parkhurst & Co. received the proceeds of the chattel-mortgaged property, within the meaning of this statute ( 3 How. Stat. § 8091), which provides that:

"If any person garnished shall have received and disposed of any of the property aforesaid of the principal defendant which is held by a conveyance or title that is void as to creditors of the defendant, he may be adjudged liable as garnishee on account of such property, and for the value thereof."

The taking of these mortgages, and leaving them off the record, was a fraud in law, if not in fact, against the plaintiff; for, during the time they were left off the record, the principal defendant was enabled to obtain credit, as he was apparently the owner of all the property, free and unincumbered. Having obtained this credit while the mortgages were kept from the record, the garnishee defendants could assert no rights under the mortgages as against the plaintiff. If they had taken the property under the mortgages, it is admitted that they would have been liable to garnishment, under the statute, for the value thereof. Instead of doing that, the parties got together, and, "taking the mortgages into consideration," arranged a sale to Williams, the garnishee defendants releasing the mortgages. In effect, the same result is reached as though the garnishee defendants had taken the property on the mortgages. By keeping them off the record, they had enabled Welsh to obtain a credit. After this was obtained, they put their mortgages on record, and now seek to shield themselves by saying that they did

not take this property; that they have none of the proceeds of it coming to them by a void mortgage; that it was a valid sale to Williams by Welsh; and that the proceeds of the sale, not obtained under the mortgage, were paid over to them on a valid debt. We think such a contention should not be sustained. In *Folkerts* v. *Standish*, 55 Mich. 463, there was no evidence that the lumber was turned out on the chattel mortgage, or that the defendant received or took possession of it under or by virtue of the mortgage, and it was therefore held that the court could not follow the proceeds into the defendant's hands. In *Heineman* v. *Schloss*, 83 Mich. 153, this garnishee statute was under consideration, and it was held that the defendant was liable as garnishee for the proceeds of the sale of the property taken under a void mortgage. It is true that in that case there was no question but that the property was received upon the mortgage; but we are of the opinion that this record shows that the proceeds of the sale received by the garnishees were in fact the proceeds of the mortgage. Mr. Parkhurst testified that Welsh could not dispose of the property without paying the mortgage, and that he so told Williams. This is what all the parties understood, and in arranging the sale they evidently treated the mortgages as though they were valid.

The judgment below must be reversed, and judgment entered here in favor of plaintiff, with costs of both courts.

The other Justices concurred.