CRUSOE BROS. CO. v. KUDNER.

136 583
f150 ¹681

1. TRIAL—FINDINGS OF FACT—CONCLUSIVENESS.
    Findings of fact by the trial judge in a case tried without a jury are conclusive if there is evidence to support them.

2. GARNISHMENT — CHATTEL MORTGAGES — FAILURE TO FILE — FRAUD.
    Where, in garnishment proceedings against a mortgagee of chattels, it appeared that the garnishee did not receive any of the property by virtue of his mortgage, but that the same was voluntarily turned out to him to apply on the debt which the mortgage was given to secure, plaintiff was not entitled to judgment, though the mortgage not only remained unfiled, and was therefore void as to him, but was withheld from filing by agreement between the mortgagor and mortgagee. *Folkerts v. Standish*, 55 Mich. 463, followed.

Error to Oakland; Smith, J.   Submitted February 25, 1904.   (Docket No. 110.)   Decided May 23, 1904.

Garnishment proceedings by the Crusoe Brothers Company against Henry C. Kudner, as garnishee of John H. Smith.   From a judgment for defendant, plaintiff brings error.   Affirmed.

*Graves, Hatch, Millis & Goodenough,* for appellant.

*Charles Kudner* (*Geer & Williams,* of counsel), for appellee.

MOORE, C. J.   This case was heard by the circuit judge, who, at the request of the parties, made findings of fact and of law, in substance as follows:

" Plaintiffs are wholesale dealers in groceries at Detroit. In 1902 the principal defendant, John H. Smith, had a small grocery store and meat market in Pontiac.   Plaintiffs sold Smith goods prior to September 8, 1902, to the amount of $73.97, and between September 8, 1902, and October 2, 1902, further goods to the amount of $115.48, and have not been paid for any of them.   Plaintiffs ceased making sales to defendant October 2, 1902, because of the filing of a chattel mortgage covering all the stock and fixtures of Smith on that date.

" The principal defendant, Smith, and garnishee defendant, Kudner, are neighbors and friends, and have had other business dealings together prior to the one involved in this case.   When Smith opened the store and meat market, he entered into a verbal arrangement of some kind with Kudner by which Kudner furnished him loans of money from time to time to enable Smith to buy cattle for his market and groceries for his store.   Sometimes a check passed directly from Kudner to the farmer selling the animal to Smith.   There is no dispute about and no doubt of these advancements or loans by Kudner.   Kudner received some of his pay in money, and some by means of meats and groceries got at Smith's store in the usual way of buying them for family use.   The amount received by Kudner in this way is shown by Smith's account books, where the goods are charged against Kudner.   To September 8, 1902, Kudner had furnished Smith in the

ways above stated $684.09, but had received moneys and goods to the amount of $384.09, leaving $300 due Kudner.

"On that date Smith executed to Kudner the aforesaid mentioned chattel mortgage, covering all Smith's stock, fixtures, and all property mentioned therein used with the business. The mortgage names $700 as the consideration and amount of indebtedness to Kudner. The mortgage does not recite that it is to cover future indebtedness to Kudner, but Kudner says it was to do so, and I have no doubt it was so intended, because Kudner continued for a time thereafter to make advancements of money without further security. The mortgage was to become due September 8, 1903. To accommodate Smith, Kudner retained this mortgage from file until October 2, 1902.

"After the mortgage was on file, Smith was unable to obtain further credit from others, and within a few weeks was unable to continue the business. He allowed Kudner to trade as long as he continued in business, and voluntarily turned out other goods and property in connection with the business, and money received from sales of goods and property, until Kudner had been repaid all the $300 of indebtedness existing when the mortgage was executed, and all subsequent sums advanced by Kudner, excepting $95 now remaining unpaid.

"No proceedings were taken to foreclose the mortgage, and I am unable to say that Kudner took any of the goods or property under the danger clause of the mortgage, or took them by virtue of or by reason of the mortgage. My conclusions are that the relations of Smith and Kudner were such that it was unnecessary, because Smith was entirely willing to pay Kudner by turning out the property to Kudner in payment of the indebtedness, as far as it would go, and that he did voluntarily turn it out for that purpose. I think the mortgage was executed so that a preference might be created in favor of Kudner if any other creditor undertook to interfere with the stock and property, but, no other creditor attempting to interfere, he found it unnecessary to resort to the mortgage.

"I am unable to say that Kudner received any of the stock and property except what he has applied on his own advancements and indebtedness. I am unable to say that any actual fraud was intended by Kudner towards other creditors, beyond securing his own pay in preference to others if Smith should be unable at any time to pay all of

them. There is no claim plaintiffs knew of this mortgage until after it was filed.

## "Findings of Law.

"I have found some difficulty in disposing of the sum of $115.48 upon the foregoing facts. The chattel mortgage was fraudulent and void as to plaintiffs until it was placed on file. Counsel strenuously insist the case is clearly controlled by that of *Baker* v. *Parkhurst*, 119 Mich. 542 (78 N. W. 643), and *Heineman* v. *Schloss*, 83 Mich. 153 (47 N. W. 107), and when the trial closed I was of that opinion. But I have since then carefully gone over the testimony with the reporter, and, being unable to find that any of the property was actually taken by virtue of the mortgage or by resorting thereto, or by arrangement of the parties because of the mortgage, I have reached the conclusion that to so hold is to go a step further than does the case of *Baker* v. *Parkhurst*, and, in effect, to hold that a debtor may not voluntarily turn out his property to a creditor in payment of a *bona fide* indebtedness. Had plaintiffs undertaken to obtain the stock and Kudner had resorted to his mortgage to get the property, I think the result might have been different as to the $115.48; but I find no basis, as the case stands, for plaintiffs to receive this amount, unless it be in the fact that the mortgage was taken for a larger sum than was at the time actually due Kudner. Judgment for costs, I think, must be entered in favor of the defendant Kudner."

The case is brought here by writ of error. It is the claim of plaintiff that the mortgage is void as to it, and, as it was withheld from the record in pursuance of an agreement to do so, it was a fraud in fact; citing the cases of *Heineman* v. *Schloss*, 83 Mich. 153 (47 N. W. 107); *Baker* v. *Parkhurst*, 119 Mich. 542 (78 N. W. 643); *Goll* v. *Miller*, 87 Iowa, 426 (54 N. W. 443); and *Falker* v. *Linehan*, 88 Iowa, 641 (55 N. W. 503). Counsel say the last two cases pass upon the exact question involved here, and that a judgment should have been given plaintiff for $115.48 and interest.

Counsel for defendant concede the mortgage was void as to plaintiff's claim because it was not filed during the time this indebtedness was contracted, but say the facts elimi-

nate the mortgage from the case, because Mr. Kudner took no property by virtue of it, and did not exercise any rights thereunder. It is their claim that Kudner bought groceries and provisions from Smith in the usual course of business from the time Smith started in business up to the time he quit; that they had mutual accounts, and that the mortgage never entered into consideration in their dealings, and that Kudner never took any goods by virtue of the mortgage, nor in any manner attempted to enforce it, but permitted Smith to go on and dispose of his goods in the usual course of business as though the mortgage had never been given, and, when Smith's stock ran down to where he could no longer do business, he sold Kudner practically the balance of his stock, and Kudner gave him credit for the same on account; that the finding of the court is correct,—citing *Folkerts* v. *Standish*, 55 Mich. 463 (21 N. W. 891), *Heineman* v. *Schloss*, 83 Mich. 153 (47 N. W. 107), and *Baker* v. *Parkhurst*, 119 Mich. 542 (78 N. W. 643).

The court found as a matter of fact that Mr. Kudner did not take any of the property by virtue of or by reason of the mortgage. There was evidence which tended to support this finding. This court has repeatedly held that the findings of fact by the court in a trial without a jury, under Cir. Ct. Rule 26, are conclusive, unless there is a total want of evidence, or where the finding is contrary to the undisputed evidence in the case. *Cragin* v. *Gardner*, 64 Mich. 399, 404 (31 N. W. 206); *Lamoreaux* v. *Creveling*, 103 Mich. 501 (61 N. W. 783).

It must be conceded that the Iowa cases tend to support the claim of plaintiff, but we think the case is controlled by a decision of our own court; that is, *Folkerts* v. *Standish*, 55 Mich. 463 (21 N. W. 891). Counsel claim the *Folkerts Case* is distinguishable from this, because there was no agreement in that case to withhold the mortgage from record, while in this case there was such an agreement. An examination of the original record will show even a stronger state of facts in the *Folkerts Case*, show-

ing an understanding between the parties to the mortgage that it should be withheld from record, than in this case. The case was made to turn upon the fact that the property was not taken by reason of the mortgage, but was bought and the proceeds applied on a debt to which the mortgage was collateral security.

If there had been in fact no chattel mortgage, and the dealings between Mr. Smith and Mr. Kudner had in other respects been the same as now, it would not be claimed Mr. Kudner must account as garnishee defendant for what he received and actually applied on Mr. Smith's indebtedness to him.    Does the fact that he had a chattel mortgage which he did not file, and under which he did not act, place him in a different position?  We think the answer must be in the negative.

Judgment is affirmed.

CARPENTER, GRANT, and HOOKER, JJ., concurred. MONTGOMERY, J., took no part in the decision.