Tripp v. Boardman.

TRIPP ET AL. v. BOARDMAN ET AL.

1. **Contract:** WHEN IN WRITING.  When a contract has been reduced to
writing, the written instrument is presumed to fully express the cov-
enants and agreements of the parties.

2. ——— : ——— : PAROL EVIDENCE.  Parol evidence having been admit-
ted to show the inducements for entering into a written contract, the
evidence discussed which failed to establish an enlargement of the
undertaking reduced to writing.

3. ——— : DISABILITY OF PARTY : RECEIVER.  A party who enters into a
contract with a receiver is bound to take notice of his disability to
contract, and makes a contract with him at his peril.

*Appeal from Marshall District Court.*

FRIDAY, OCTOBER 25.

ACTION in equity, to have declared null and void a certain
contract to modify judgments rendered in pursuance thereof,
and to set aside a sale of the Farmers' Union Railroad, made
under one of said judgments.   The facts are stated in the
opinion.   The District Court found for the defendants, and
entered a decree accordingly.

The plaintiffs appeal.

*Caswell & Meeker* and *Hubbard, Clark & Deacon,* for appel-
lants.

*H. B. Fouke, Henderson & Merriman* and *Boardman &
Williams,* for appellees.

SEEVERS, J.—This cause is triable *de novo* in this court. The abstract contains one hundred and fifty-seven printed pages, and there is an amended abstract of seventeen pages. We can undertake to set out but a small part of the matter contained in these abstracts. Indeed it is not regarded as essential that we should do so. The material facts are: That in 1874 or 1875 a narrow gauge railroad was projected between Liscomb, in Marshall county, and Grundy Center, in Grundy county. The plaintiffs Tripp, Noyes & Hayden, and Churchill, under contracts with the company, furnished material for and performed work and labor in the construction of the road to the value, in the aggregate, of about twenty-seven thousand dollars. One Edwards had also done work and labor in the construction of said road to the value of about thirty-two thousand dollars.

1. CONTRACT: when in writing.

Statements claiming mechanics' liens were filed by all these parties. Tripp's was filed January 11, 1876; that of Noyes & Hayden, January 14th; Edwards', January 17th; and Churchill's, February 19th. When these liens were filed, and at all times thereafter, the company was insolvent. Considerable work had been done. A portion of the road was substantially completed with a wooden rail. Some rolling stock had been procured, but the company was indebted therefor, and the vendors had chattel mortgages thereon to secure the indebtedness.

On the 26th day of January, 1876, a contract was entered into between the plaintiff Edwards and the company, whereby it was agreed that upon a compliance with the conditions of the contract the said mechanics' liens should be cancelled, and the bonds of the company, secured by mortgage on the road, should be accepted in payment of the indebtedness to said parties. It is claimed that this agreement was impracticable, and was abandoned by the several parties thereto previous to February 11, 1876. There is no evidence of any such abandonment on the part of Edwards. For aught we

can see in the testimony he regarded it as in full force. Nor can we say is was impracticable or incapable of enforcement.

The company was indebted to the Central Railroad in the sum of about three thousand dollars, and some of the plaintiffs, together with Edwards, were bound therefor as sureties. About January 26th, or a few days thereafter, the plaintiffs, being without means to complete the road, knowing the company to be insolvent, and encumbered with the contract of January 26th, and some of them, at least, being desirous of getting rid of Edwards, opened negotiations with the defendants Boardman and Grinnell, for the purpose of making some arrangement by which the road could be·completed, and the plaintiffs obtain payment of the amounts due them, the result being the execution of the following written contract:

"We, the undersigned, in order for a mutual understanding in connection with our present and future interests in and about the Farmers' Union Railroad, agree to the following specifications:

"1. An effort shall be made by those desiring to want to purchase W. J. Edwards' interest, claim and stock at whatever price purchased, not exceeding eight thousand four hundred dollars, then a judgment may be had thereon for twelve thousand dollars, to draw ten per cent, to be the first lien on the road.

"2. The claim of the following shares be scaled and consolidated, thus including all their stock and interest of any form, to-wit:

| | | | |
|---|---|---|---|
| "Noyes & Hayden, | - | - | $ 6,000 |
| "J. W. Tripp, | - | - | 5,000 |
| "S. M. Churchill, | - | - | 4,000 |
| | | | |
| "Total, | - | - | - $15,000 |

"And the same shall be merged into a judgment which shall be a second.lien on the road, to draw ten per cent interest.

"3.   The claim of the Central Railroad of Iowa shall be rated at three thousand dollars, and the same shall draw six per cent interest, shall not be due till the Farmers' Union is completed to Grundy Center or Howard, and shall then be collected only by rebate at the schedule prices now allowed.

"4.   Said Central Railroad of Iowa shall, in like manner, wait for and receive its pay for such other and further haul service and freight it may do for the said Farmers' Union till completed as above.

"5.   When a construction company is formed we will use all reasonable efforts that it assume said judgments and pay the interest on the same; so long as it shall pay the interest semi-annually the principal shall remain unpaid, not exceeding ten years, said company to provide for each debt as on prior liens.

"6.   Each of these parties will use every endeavor, at as early a period as convenient, to lay a third rail to Marshalltown, not pledging, however, themselves personally nor pecuniarily, and not anticipating any work can be done till the road is completed to Grundy Center or Howard.

"Dated February 11, 1876.

> "H. E. J. BOARDMAN,
> "NOYES & HAYDEN,
> "SAMUEL M. CHURCHILL,
> "J. W. TRIPP,
> "CENTRAL RAILROAD OF IOWA,
>     "by J. B. GRINNELL, Receiver."

During the negotiations aforesaid, and at the time the contract was executed, as claimed by the plaintiffs, certain representations or promises were made by Boardman and Grinnell which can be best stated in the language of the petition, as follows:

"The said defendant J. B. Grinnell was then the receiver and general manager of the Central Railroad of Iowa, and represented and stated that he had authority as such receiver

to enter into the contract hereinafter stated, and that the Farmers' Union Railroad, if completed, would be a valuable feeder to the Central road, and that he would aid in completing it, give it a drawback on its freights, etc. The said defendant H. E. J. Boardman was then the attorney for Edwards, whose lien was filed subsequent to the lien of the plaintiff Tripp and the plaintiffs Noyes & Hayden, and proposed that if the said plaintiffs would allow the lien of the said Edwards to be the first lien on the said road, that he and the defendant J. B. Grinnell would organize a construction company with a cash capital of one hundred thousand dollars, and would complete the said railroad to Grundy Center, and would use every endeavor to lay a third rail on the Central road from Liscomb to Marshalltown, but not pledging themselves personally, however, to lay the said third rail, and to all of which the defendant Grinnell fully assented and agreed."

At the time the contract was signed the understanding was, we think, that Boardman should purchase the Edwards claim; and yet, if he had declined doing so, we are unable to see wherein he would have been liable in any way by reason of such failure. He, however, did purchase such claim, and an action was brought thereon by him in the Circuit Court of Marshall county, and also by the plaintiffs, on their claims mentioned in the contract, in which actions, on the 22d day of February, 1876, decrees were entered as contemplated in the contract, the amount due Boardman being made the first lien on the road. The plaintiffs not only consented thereto, but they filed an affidavit that they believed "the sum to be just and correct, and voluntary consent to the rendition thereof." Under this decree the road was sold to Boardman, subject to redemption for twelve thousand four hundred dollars. The relief asked by the plaintiffs is, that the contract of February 11, 1876, be adjudged null and void; that the same be set aside and held for naught; that the judgments and foreclosure of said mechanics' liens be so modified as to make the liens of Tripp and Noyes & Hayden first liens on the road, in

the order of their filing, and that the sale of the road be set aside and vacated.

The plaintiffs insist it is competent for them to prove, by parol, the representations, promises or agreements made by Boardman and Grinnell previous to and at the time the contract was executed. This is strongly resisted by the defendants, and, to say the least, there are heavy doubts whether such matters can be so established. Evidence so tending, however, was admitted, and the same is now before us, from a careful examination of which we arrive at the conclusion that the plaintiffs have failed to establish the aforesaid matters by a preponderance of the ·evidence.

2. ———: ———.
parol evidence.

To maintain the propositions contended for by them the plaintiffs mainly, if not exclusively, rely on their own testimony. There are four of them. Their testimony is not as clear, explicit and positive as it might be. That there was talk about a construction company, that the defendants thought one could be formed and the road constructed, and so represented, we have no doubt. On all hands it was believed or hoped the road would be completed, and the plaintiffs, at least, no doubt thought the contract would largely conduce to this result. But we are not satisfied that either Boardman or Grinnell agreed or represented they would form a company or build the road. In determining this question the situation and condition of the parties should be ·considered. Neither of the defendants had any pecuniary interest in the road. The estimated cost of completing it was sixty thousand dollars, or upwards.

As it was well known and understood that no positive arrangements had been made to form a construction company, it was uncertain, and the plaintiffs must have so understood, whether one could be formed or not. It was not contemplated the defendants should furnish all the funds required. On the other hand, the plaintiffs had a large pecuniary interest, which, if not worthless, was of a doubtful character, unless the road

could be completed, and this they were unable to do in and of themselves. For the defendants, under such circumstances, to undertake to build the road or form a construction company to do so, would be, to say the least, not a usual and business-like transaction.

These considerations are entitled to weight when there is a want of explicitness in the evidence of the plaintiffs, and especially so when the two defendants positively deny they so agreed, or made representations to that effect upon which the plaintiffs could rightfully rely.

The defendants admit they thought, believed, or hoped the road would be built, and that they believed a construction company could be formed, and they so represented. We see nothing in the testimony to warrant us in concluding they did not so believe. The evidence warrants the conclusion that, coupled with their belief, and depending thereon, were certain conditions as to local aid and other matters, which the testimony of Sears shows entirely failed, through no fault of the defendants.

Besides this the plaintiffs knew and discussed the fact, when they signed the contract, that there was no provision therein which bound the defendants to do anything in the direction now claimed. Having such knowledge it must be regarded as strange, if there was an agreement or understanding such as claimed, they did not insist on having it reduced to writing and included in the contract. We find no evidence they so insisted, and one of them at least (Hayden) was opposed to signing the contract for this reason. If the testimony of W. Pickering and R. E. Sears, both of whom are disinterested, is to be believed—and we know of no reason why it should not—the preponderance of the evidence we think is with the defendants.

It is urged there was no consideration for the contract, and for making the Edwards claim a prior lien to the claims of Tripp and Noyes & Hayden. In this we cannot concur, because—*First*, the plaintiffs, in substance, proposed to

Boardman, "If you purchase the Edwards claim it shall be a first lien." On the faith of this the purchase was made. *Second,* for some reason, best known to themselves, the plaintiffs were anxious to get rid of Edwards, and to have Boardman become interested in having the road completed. *Third,* they got rid of the contract of January 26th, out of which litigation might ensue. And *Fourth,* the Edwards claim was cut down from thirty-two thousand dollars to twelve thousand dollars. We incline to think any of these things a sufficient consideration; certainly all combined would be.

It is insisted, as the claim of the Central railroad was not postponed until the completion of the road, and then paid as 3. ——: disa-  contemplated in the contract, that the plaintiffs bility of party: receiver.    are entitled to the relief asked. It will be noticed that Grinnell did not personally sign the contract. There is no testimony tending to show he represented he had authority from the court, by whom he was appointed receiver, to enter into such a contract. On the contrary, it is shown that he stated he could not do so without such consent. This, as a matter of law, is without doubt correct, and the plaintiffs were bound to so know. They, therefore, took the chances of this portion of the contract being legal, or ever becoming so. Besides, we are unable to see wherein the plaintiffs have been damaged. As we understand the evidence they have paid nothing. But, if mistaken in this, we do not believe, for this reason, the contract should be set aside. A full and complete remedy, in this respect, may be had in an action at law for damages, if any such have been sustained, and the right to a recovery exists.

AFFIRMED.