LIDDLE & CARTER *et al.*, Appellees, v. H. R. ALLEN *et al.*, Appellants.

FRAUDULENT CONVEYANCES: INTENT TO HINDER AND DELAY CREDITORS: GARNISHMENT: LIABILITY OF GARNISHEE.

WEDNESDAY, JANUARY 24, 1894.

*Appeal from Shelby District Court.*—HON. N. W. MACY, Judge.

THIS suit is a controversy between the creditors of the defendant H. R. Allen, an insolvent debtor, on the one side, and the defendants Smith & Cullison, who claimed to have purchased the property of said Allen, on the other. It is claimed by Smith & Cullison that they took a bill of sale of the personal property of said Allen, and a deed or conveyance of his real estate, in good faith, and for a valuable consideration. The creditors maintained that the transfer of the property from the insolvent was fraudulent as to his creditors. A decree was entered in the district court in favor of the creditors, and Smith & Cullison appeal.—*Affirmed.*

*Smith & Cullison* for appellants.

*Byers & Lockwood* and *Jesse B. Whitney* for appellees.

ROTHROCK, J.—I. It would be an almost endless undertaking to set out this whole controversy as shown by the pleadings. It will be sufficient to state the facts and issues in a general way. For some time prior to April 6, 1889, the defendant Allen was engaged in mercantile business at Irwin, in Shelby county. He was the owner of the lot and building used by him in his business. He owned the stock of goods in the building, and the notes and accounts against customers, and the store furniture and fixtures. He was somewhat in debt, but there were no liens on his property. On said sixth day of April, 1889, he executed a chattel mortgage on his stock of goods and merchandise, furniture and fixtures, and notes and accounts, to one M. Humphrey and to A. C. Allen, the wife of said H. R. Allen. The consideration named in the mortgage was four thousand, eight hundred and eighteen dollars, and on its face it appeared to have been given to secure the payment of six promissory notes. The mortgage was not filed for record until the twenty-fourth day of July, 1889. The filing of this mortgage precipitated a crisis in the business career of Allen. Two days thereafter, some of the wholesale merchants who had claims against him commenced actions, and sued out attachments, and levied the same on his stock of goods. At about the same time, Allen made another chattel mortgage upon his stock of goods, notes, and accounts to his wife, to secure the payment of a note for one thousand, seven hundred and sixty dollars. This mortgage was made subject to the mortgage for four thousand, eight hundred and eighteen dollars previously given to Humphrey and A. C. Allen. He also gave to A. C. Allen a real

estate mortgage on the lot and building, to secure the payment on said sum of one thousand, seven hundred and sixty dollars. On the same day, and after the writs of attachment had been levied on the stock of goods, and while the same was in the possession of the sheriff under said writs, H. R. Allen made and delivered to Smith & Cullison a bill of sale of all of said personal property, notes, and accounts, subject to the mortgages above referred to, for a named consideration of one thousand dollars; and on the same day said Allen and his wife made and delivered to Smith & Cullison a warranty deed for the lot and building, for the same consideration. Within a few days thereafter, other wholesale merchants commenced actions on their claims against Allen, and garnished Smith & Cullison as supposed debtors of Allen. In all these actions judgments were obtained against Allen. Later on, other creditors commenced actions, and recovered judgments against Allen, and issued executions, which were returned unsatisfied, and the judgment creditors filed petitions in equity to subject the said real estate to the payment of their judgments. Issues were made upon all these garnishment cases, and on the petitions in equity, and all of the actions were, by agreement, consolidated and tried as one case, which was by said agreement transferred to the equity side of the court, and tried as in equity; and it is here for trial anew in the same manner.

The ultimate question for determination is whether the bill of sale and the deed to Smith & Cullison were void as to the creditors of H. R. Allen. If it was a good faith transaction, the case demands no further consideration. But it appears without conflict in the evidence that Smith & Cullison knew, when they took the bill of sale and deed, that attachments had been levied on Allen's stock of goods, and that his career as a merchant was practically closed. They also knew that there were other creditors, who had not yet commenced actions against Allen. Smith & Cullison paid no consideration whatever for the transfer of the property to them. It is true that they claim that they performed legal services for Allen for quite a large amount, but all of this claim for legal services, except a mere nominal sum, accrued and was earned in this very litigation with the creditors of Allen. A large part of it was earned in a protracted trial of an action of replevin from the sheriff of part of the goods in which the rights of Mrs. Allen as a mortgagee was the question at issue, and in which she was defeated. This action in replevin was a direct contest between Mrs. Allen and the creditors, and Smith & Cullison were attorneys against the creditors. We need not set out the evidence in detail. The district court was unquestionably right in finding that the whole transaction between Allen and Smith & Cullison was a fraud upon the creditors. We seldom cite authorities upon elementary principles of the law. In view of further questions to be determined, we may say that, even if Smith & Cullison had paid one thousand dollars in cash for the transfer of the property, under the facts of the case the transaction would be fraudulent. If the property be conveyed with the design on part of the vendor, participated in by the vendee, to hinder delay, or

defraud creditors, the vendee's title will not be protected, notwithstanding he paid a sufficient consideration. *Chapel v. Clapp*, 29 Iowa, 191; *Chapman v. Ransom*, 44 Iowa, 377; *Sweet v. Wright*, 57 Iowa, 510; *Williamson v. Wachenheim*, 58 Iowa, 277. In other words, the party to whom such a transfer is made can not even be allowed to participate in the proceeds of the property with good faith creditors. *Wilson v. Horr*, 15 Iowa, 489.

II. The court below found as a fact that the value of the goods and merchandise and other property, including the accounts and notes transferred by Allen to Smith & Cullison by the bill of sale, was four thousand, five hundred dollars. It is strenuously contended that this amount is largely in excess of the actual value of the property. We have given the evidence on that feature of the case a most careful and searching investigation, and our conclusion is that the value, as found by the district court, is not greater than shown by a fair preponderance of the evidence. We may say further, that we think, if there was any error in valuation, it was favorable to the appellants.

III. The court found as a fact that all of the property and notes and accounts went into the possession of the appellants. This finding is claimed to be contrary to the evidence. Here, again, we think there was no error. The evidence shows beyond all question that the goods and merchandise and the notes and accounts were either taken possession of by the appellants or by their agents. Any other finding, under the evidence, would be in direct conflict with the rights which the appellants claim under the bill of sale. It was insisted in the court below, and is claimed here, that the sale was an unconditional and good faith transaction. It is contended that the appellants ought not to be held as garnishees, because they did not have possession of the property. It is true that a garnishee is only held for debts owing to the defendant in the action, and for property in his possession or under his control. The true inquiry in such cases is, was the garnishee in possession or had he the control of the property in controversy when he was garnished? We find as a fact, concurring with the district court, that when the appellants were served with the notice of garnishment, it was their duty to call a halt, and hold all of the property included in the bill of sale to await the result of the litigation. They preferred to take the other course, and sell the property, collect the notes, and apply the proceeds in payment of the two chattel mortgages. They were not thereby released of their obligations to the creditors of Allen. It is to be remembered, and we base the decision of this question largely upon the consideration, that this is a case in equity, and all the questions involved are required to be determined upon recognized equitable principles. The rule by which the appellants seek to exonerate themselves from liability, and the authorities which they cite, have no application to the facts of this case. It is the rule applicable to a strict garnishment, where the garnishee has possession of the property, and not to a case where he is found to be in possession of property by a fraudulent transfer. The case at bar, upon the issues made and the agreement of the parties, is more like a creditors' bill than a strict garnishment.

IV. It was found by the court that the chattel mortgage from Allen to Humphrey and Mrs. Allen was fraudulent and void as to the creditors of Allen. The ground upon which this finding was based is not clearly disclosed in the finding of the learned district judge who heard the cause. But other findings of fact make it quite evident that this mortgage was thought to be fraudulent, because it was purposely and intentionally withheld from the record from April 6, 1889, the date of its execution and delivery, to the twenty-fourth day of July, in the same year. It was found by the court that "it was agreed between the parties, at the time, that said mortgage should not be filed for record, in order that the mortgagor's credit might not thereby be impaired, and his business imperiled." It is contended by the appellants that the evidence does not show that any such agreement was made. It is probable that the finding would admit of some doubt if the evidence of witnesses alone should be considered; but when that evidence is supplemented by the fact that the mortgage was so withheld from record, and no reason appears therefor, there is no other conclusion than that the purpose was to maintain the credit of Allen. This fact being found, the mortgage was fraudulent and void as to the other creditors. The record shows that the goods purchased by Allen of the parties herein who are contesting the bill of sale were for the most part, if not all, bought after the mortgage was executed and delivered, and before it was recorded. It was held by this court in *Goll & Frank Co. v. Miller*, 87 Iowa, 426, that such a transaction was fraudulent as to creditors; and that case was followed in *Falker v. Linehan*, 88 Iowa, 641.

V. Humphrey was not made a party to any of these actions, and it is claimed that the court had no power to determine the validity of his mortgage without having personal jurisdiction of him. We think that the appellants are in no position to raise that question. The transfer to them being a fraud upon the creditors of Allen, and his property being in their hands wrongfully, the fact that they paid for the property in part by discharging Humphrey's mortgage can not be held to exonerate them from the fraud, any more than if they had paid the amount of the mortgage to Allen. As we have seen, a fraudulent grantee is not protected, even to the amount which he has paid for the property. If the appellants have paid money in furtherance of the design to hinder and delay creditors, they must resort to the parties to whom the money was paid. It was not incumbent on the creditors to make Humphrey a party to this suit.

Other questions are made in argument, or rather other phases of the question we have considered are discussed. We think we have sufficiently elaborated every material question in the case. The examination of the record has been attended with no little difficulty, by reason of a disagreement of counsel as to the correctness of abstracts, which has compelled us to examine the transcript of the evidence to some extent.

It is claimed by the appellants that the costs of appellees' abstracts, and of the transcript which was required by the conflict of abstracts, ought to be taxed to appellees. We do not concur in that view. It appears to us that the appellees were justified in filing an abstract. It is

possible that it contained more printing than was necessary, but the excess is so inconsiderable that we do not think costs should be taxed therefor.

The decree of the district court is AFFIRMED.