LYMAN EVERINGHAM, Doing Business Under the Name of LYMAN EVERINGHAM & COMPANY, Appellant, v. A. W. HARRIS & COMPANY, THE NORTHWESTERN. STATE BANK OF SIBLEY, IOWA, H. E. THAYER, Receiver of said Bank, et al.

**Fraudulent Conveyance: WITHHOLDING FROM RECORD.** A bank took a mortgage, and for two years failed to record it, without any agreement that it should not record. The bank made a general assignment, and then a former officer recorded it, without authority from the bank, or its assignee. The bank never asserted any rights under it. The plaintiff, and others, extended credit to the mortgagor, in the belief that he owned the mortgaged property, clear. While the bank knew that the plaintiff and the mortgagor were dealing together, it used no concealment, and made no representations to induce plaintiff's belief. The assignee, ignorant of the existence of the mortgage, took bills of sale to the property covered by the mortgage, in payment of indebtedness from mortgagor to the bank, appearing otherwise than by said mortgage. *Held,* plaintiffs cannot impeach said bills of sale.

**Power of Receiver: RATIFICATION.** While a receiver may not give extension upon the giving of security, his taking property to pay a debt cannot be held invalid for want of power, when the transaction is later approved by the court.

*Appeal from Osceola District Court.—HON. FRANK R. GAYNOR, Judge.*

THURSDAY, OCTOBER 22, 1896.

PLAINTIFF, a judgment creditor of the defendant, A. W. Harris, insolvent, brings this action in equity to set aside three certain bills of sale executed by the defendant, Harris, one to the defendant bank, and the

other two to defendant, H. E. Thayer, as assignee of said bank. Plaintiff alleges that said bills of sale are fraudulent and void as to the creditors of said Harris, and asks that the property covered thereby, or so much as may be necessary, may be subjected to the payment of his said judgment. The defendant, Thayer, for himself, and as receiver of said bank, answered, denying the allegations of fraud. Decree was entered dismissing plaintiff's petition, from which he appealed.—*Affirmed.*

*Park & Odell* for appellant.

*O. J. Clark* and *Swan, Lawrence & Swan* for appellees.

GIVEN, J.—I. There is but little controversy as to the facts of this case, and the following is the substance thereof as conceded, or fairly established by the evidence. For some time prior to April 29, 1893, the plaintiff was engaged in the commission business in Chicago, receiving and selling grain and other products. During the same time, the defendant, Harris, was engaged in buying grain at several points in Iowa, at each of which he owned and used warehouses, or elevator buildings, situated upon grounds belonging to other persons. Mr. Harris shipped grain to the plaintiff, and drew upon him on account of said shipments, most, if not all of the time, through the defendant bank. Plaintiff kept an open account of these transactions. On November 21, 1893, the plaintiff obtained a judgment against Harris, for six hundred and sixty dollars and seventy-nine cents, on a note given by Harris for money advanced to him by the plaintiff, from January 1, 1892, to April, 1893. Execution was issued upon this judgment, and returned wholly unsatisfied. In April, 1891, Harris

executed and delivered to the defendant bank, a bill of sale, in the nature of a mortgage, for twenty-five thousand dollars, on the following described property: "Steam elevator and appurtenances, office and furniture, and coal house at Sibley aforesaid; also, steam elevator and appurtenances, and coal house, at Ocheyedan; also, undivided one-half interest in warehouse and appurtenances at Harris; also, grain warehouse and appurtenances at Sibley; also, warehouse and appurtenances at Archer Grove, O'Brien county." This instrument was not filed for record until April 6, 1893. On the sixth day of April, 1893, said bank suspended business, and made a general assignment for the benefit of its creditors to the defendant, H. E. Thayer, who accepted the assignment, and forthwith took possession of all the assets of the bank. Mr. Thayer was afterwards appointed and qualified as receiver of said bank, and continued as such to hold the assets. At the time the assignment was made the defendant, Harris, was largely indebted to said bank, and on the seventh day of April, 1893, he executed and delivered to H. E. Thayer, as such assignee, two absolute bills of sale,—the first on property as follows: "The elevator and all fixtures and appliances therewith connected, consisting in part of office furniture, scales, coal house, portable corn crib, grain and coal on hand, and all accounts of A. W. Harris & Co., at Sibley, Iowa; also, the elevator office, coal house, and scales at Ocheyedan, Iowa, and all grain and coal on hand, with all fixtures and appurtenances of every name and nature. Both elevators are on the right of way of the B., C. R. & N. Ry. at Sibley and Ocheyedan, Iowa." The consideration recited in this bill of sale, is ten thousand dollars. The other recites a consideration of fifteen thousand dollars, and is for the following property: "The warehouse, scales, furniture, and fixtures, consisting of one fanning mill,

scoops, testers, etc., also the office and desks contained therein, also one iron safe, all situated on the right of way of the Illinois Central railroad, so commonly called, being the Dubuque & Sioux City Railroad, at Archer, in O'Brien county, Iowa,—the intention being to convey all property of grantor at Archer, Iowa, whether specially enumerated or not." The first bill was filed for record on the day of its execution, and the other on the day following. On receiving these two bills of sale Mr. Thayer gave to Mr. Harris a receipt reciting the fact, the property, and the consideration, and that "the same to be and constitute a credit upon the indebtedness of A. W. Harris, to the Northwestern State Bank, of such amount, or any part of such amount, as hereafter approved or allowed by district court of Osceola county, Iowa, in case such court sees fit to cut down such consideration." Mr. Thayer took from Harris immediate possession of the property conveyed by these bills of sale, and afterward sold the same, which sales were approved by the court. It appears by the evidence, that said twenty-five thousand dollar mortgage remained in the possession of the bank, unrecorded, up to the day when said general assignment was made, and that upon that day, Mr. Dawn, the former cashier, took the same to the recorder's office for record. It also appears that Mr. Thayer, the assignee, had no knowledge of the existence of said mortgage until some five or ten days thereafter, the time when it was returned by the recorder. There is no doubt but that the plaintiff, relying upon the usual sources of information, dealt with the defendant Harris, upon the belief that he owned the property named above, free from incumbrance. Plaintiff alleges, that said mortgage was withheld from record in pursuance of an understanding between the parties to it. There is no evidence of such an understanding, nor is there any

evidence to sustain the allegation, that J. W. Orde and R. A. Hartard, who were instrumental in organizing the defendant bank, were ever partners of A. W Harris in the grain business. The officers of the defendant bank, no doubt, knew, during the time the mortgage was withheld from record, that Harris was shipping grain to the plaintiff, and drawing drafts upon him; but there is no evidence, that they at any time knew the state of the account between them, or that plaintiff was extending credit to Harris.

II. Appellant's contentions are that the withholding of the twenty-five thousand dollar mortgage from record, under the circumstances disclosed, renders said mortgage fraudulent and void, as against the creditors of A. W. Harris, who extended a credit under the belief that Harris owned the property free from incumbrance; also, that defendant Thayer, as assignee, stood in the place of the bank, and took the two bills of sale subject to all rights and equities in favor of third parties, and that the wrong and fraud in withholding the first mortgage from record affected the validity of the two bills of sale taken by Mr. Thayer. Appellant relies largely upon the cases of *Goll & Frank Co. v. Miller*, 87 Iowa, 426 (54 N. W. Rep. 443), and *Bacon v. Harris* (62 Fed. Rep. 99). A careful comparison of the facts of these cases with the one under consideration, will show some very marked differences. In *Goll & Frank Co. v. Miller*, it was conceded by the bank that it was agreed that the mortgages taken prior to the one of March 20, 1890, should not be recorded, and the court found that the same agreement existed as to that mortgage. In this case, there is no evidence of such an arrangement, except as it may be inferred from the fact that the mortgage was withheld; but, inasmuch as nothing is, or ever has been, claimed under that mortgage, we think the inference is equally warranted that

it was not recorded because the bank did not intend to claim under it. In the *Goll & Frank Co. Case*, the bank had been inquired of by some of the creditors as to the financial standing of Miller, and answered without disclosing the fact of the mortgages. In this case there was no inquiry of the defendant bank, and no representations nor concealments by it as to Harris' standing. In that case the bank took the absolute bill of sale in satisfaction of the last mortgage, and with full knowledge that that mortgage and those preceding it had been withheld from record in pursuance of an agreement between the parties to them, and for the purpose of giving Miller a fictitious credit. In this case the two absolute bills of sale in question were taken by the receiver in ignorance of the existence of the mortgage, and not in satisfaction thereof, but of the indebtedness of Harris to the bank, as otherwise appeared. The case of *Bacon v. Harris* involves the validity of this same mortgage and these same bills of sale, and the case seems to have been submitted upon the same showing of facts, except in two particulars. In that case it is said: "The evidence shows that J. W. Orde and R. A. Hartard, who were the president and cashier of a private bank known as the Exchange Bank of Sibley, became partners in the grain business, carried on under the name of A. W. Harris & Co. The Exchange Bank was merged into the Northwestern State Bank, J. W. Ord being president and A. R. Harbord cashier thereof. In April, 1891, a bill of sale, in the nature of a chattel mortgage, was executed and delivered to the Northwestern State Bank, which covered substantially all the partnership property." In this case there is no evidence as to the relation of Orde and Hartard, or either of them, to Harris, or to either of said banks. It is further said in that case: "The mortgage was not

recorded until April 6, 1893. The reason why it was so withheld from record, could have been no other than the one given by Harris in his statement to the agent of complainants, in which he stated that it was withheld from the record because it would hurt his credit if it was filed, and the bank assented to his request not to record it." As already stated, there is no such evidence in this case. Mr. McNeil, agent for the plaintiff, was examined, and testifies at length as to representations made by Harris, touching his financial condition. He testifies, that after hearing of the failure and the bill of sale, he called on Harris, and asked him what the bill of sale meant, and that Harris replied, that it was given as collateral security for money he was using in buying and selling lands; that, when asked why he suppressed it, and did not tell Mr. McNeil of it, he replied, "that it would ruin his credit" Mr. McNeil further states: "Harris never told me at any time, that there was an agreement between himself and the bank, to whom the bills of sale or mortgages were given, that said instruments should not be placed on record." The decision of the learned judge, in *Bacon v. Harris*, was in favor of the plaintiff, and seems to have rested largely upon two facts proven therein, which we have shown do not appear in this case, and also upon rulings in the federal court to the effect that the failure to record constitutes such negligence and laches as in equity requires that the loss which in consequence thereof must fall on one of the two, shall be borne by him through whose fault it was occasioned. In *Mull v. Dooley*, 89 Iowa, 316 (56 N. W. Rep. 514), it is said: "This court has never held that the mere withholding of a chattel mortgage from record would, of itself, render it fraudulent as to creditors who became such after the execution and before the filing of the mortgage."

The case before us, as shown by the record, is this: The bank took the twenty-five thousand dollar mortgage, and withheld it from the record, without any arrangement to do so. The mortgage was filed for record without the authority of the bank or of its receiver, and neither the bank nor the receiver has ever asserted any rights under it. The receiver, ignorant of the existence of the mortgage, took the two bills of sale in question in payment of the indebtedness of Harris to the bank. The plaintiff, and others, extended credit to Harris, in the belief that he owned the property in question, a belief that was not induced by any representation or concealment of the bank. True, the bank did not disclose the indebtedness to it by recording the mortgage; but it was not required to do so, unless it intended to claim under the mortgage. Not being inquired of, as in the case of *Goll & Frank Co.*, the bank was not required to disclose the indebtedness to it, unless by the mortgage it claimed a priority over other creditors. In the case of *Letts, Fletcher & Co. v. McMaster*, 83 Iowa, 450 (49 N. W. Rep. 1035), the defendants had given a chattel mortgage which was never recorded, and subsequently gave another mortgage to secure the same and an additional indebtedness, whereupon the first mortgage was surrendered. In that case it is said: "If the appellee was claiming anything under this unrecorded mortgage, then what is said with respect to giving a secret lien on property, and the authorities cited, would be in point; but the appellee is claiming nothing by virtue of that mortgage, and the situation between the parties is the same as if that mortgage had never been given. By its surrender the appellee waived all rights under it. We may add that it does not appear that the mortgage was withheld from the record in pursuance of any agreement, nor at the solicitation of the mortgagor." We think the same rule should apply in

this case, notwithstanding the mortgage was unauthorizedly recorded, was not surrendered, and the bills of sale were taken in ignorance of its existence. Taking the bills of sale of the mortgaged property on account of the indebtedness certainly operated as a satisfaction of the mortgage. Therefore, we think that, if the bills of sale had been taken by the bank itself, and in consideration of the mortgage, that act would be sustained as valid, because the mere withholding of the mortgage from record is not, under the rules of this court, such a fraud as will vitiate it, and there is no evidence that it was withheld in pursuance of any agreement in fraud of the creditors of Harris. We think the case is so essentially different in its facts, from that of *Goll & Frank Co. v. Miller*, and from *Bacon v. Harris*, as that those cases are not controlling. Appellant's counsel cite *Liddle v. Allen*, 90 Iowa, 738 (57 N. W. Rep. 603). In that case "it was found by the court that it was agreed between the parties, at the time, that said mortgage should not be filed for record, in order that the mortgagor's credit might not thereby be impaired, and his business imperiled;" and this finding was sustained upon the evidence of witnesses, "supplemented by the fact that the mortgage was so withheld from record, and no reason appears therefor."

III. Appellant questions the authority of the receiver to have taken these two bills of sale, saying: "It is very doubtful whether an assignee has any authority to take this bill of sale. The assignee's property rights are just what the bank has conveyed, and his duty is to collect and distribute. A chattel mortgage, taken on time, is unauthorized and void. Even a receiver has no authority to enter into a contract without leave of court,"—citing *Tripp v. Boardman*, 49 Iowa, 410. These claims may be conceded; yet all that this receiver did in this

instance was to collect. He did not take a mortgage on time, but took property on account of the indebtedness, to be credited in such amount as approved or allowed by the court. The transaction was approved by the court, and therefore, should not be held invalid because of a want of authority in the receiver. Our conclusion is that the judgment of the district court should be AFFIRMED.