In re EWALD & BRAINARD.

(District Court, N. D. Iowa, Central Division. February 8, 1905.)

No. 474.

1. BANKRUPTCY—PRIORITY BETWEEN CREDITORS—EFFECT OF WITHHOLDING MORTGAGE FROM RECORD.

The act of a creditor in withholding from record a chattel mortgage securing his debt, by agreement with the mortgagor, until the latter's bankruptcy, while it may render the mortgage invalid as a lien as against subsequent creditors without notice, does not of itself affect his right to prove his debt in bankruptcy, nor subordinate it to the claims of subsequent creditors.

2. SAME—PARTICIPATION IN DEBTOR'S FRAUD.

A creditor holding an unrecorded chattel mortgage securing his debt, at whose instance the debtor obtained a loan from a bank on a written

statement showing his property free from incumbrance, and who received part payment of his debt from the proceeds, will be postponed in bankruptcy, as to the remainder of his claim, to the debt of the bank.

In Bankruptcy. On petitions of the First National Bank of Crystal Lake and the Prussia Hardware Company, of Ft. Dodge, Iowa, for review of the orders of the referee denying them priority of payment from the bankrupts' estate of their respective claims over the claims of Gilbertson & Thompson and the Crystal Lake State Bank.

L. S. Butler and Wright & Nugent, for petitioners.

J. E. Wichman and H. A. Brown, for Gilbertson & Thompson and Crystal Lake State Bank.

REED, District Judge. It appears from the testimony that in March, 1902, the bankrupts made a chattel mortgage upon their entire property, consisting of a stock of merchandise, to Gilbertson & Thompson, doing business as bankers under the name of the Crystal Lake Bank, to secure a debt of $3,000 represented by two notes of the bankrupts, dated in September preceding, one for $500 and one for $2,500, owing by them to that bank. By agreement between Gilbertson & Thompson and the bankrupts this mortgage was not to be recorded, and it was not recorded prior to the institution of the bankruptcy proceedings. November 7, 1902, the bankrupts made a bill of sale of the same stock of merchandise to the Crystal Lake State Bank (which was the successor of the Gilbertson & Thompson bank) to secure a claim of about $185 to that bank, and also the balance due upon the Gilbertson & Thompson mortgage debt; and by agreement between the parties this bill of sale was not to be recorded, and it was not recorded prior to the bankruptcy proceedings. About June 1, 1902, when the note of $500 became due, the cashier of Gilbertson & Thompson requested Mr. Brainard, one of the bankrupts, that they make a loan from the First National Bank of Crystal Lake. Brainard in reply said that he thought he could do so, but would have to tell that bank of the mortgage held by Gilbertson & Thompson. The cashier replied that he need not do that, as it was none of the business of that bank that Gilbertson & Thompson held this mortgage. Brainard thereupon applied to the First National Bank of Crystal Lake for a loan to the bankrupts of $1,000, and upon being questioned by the cashier of that bank as to the financial condition of his firm, made a written statement that their merchandise was worth about $5,000, and was free and clear of all incumbrance. Upon the strength of this statement the First National Bank loaned the bankrupts $1,000, took their note therefor unsecured, and about October 1st following bought notes made or indorsed by the bankrupts to the amount of $371. The cashier of the First National Bank, who concluded these transactions, testified that the bank would not have made the loan nor bought the notes if he had known of the mortgage to Gilbertson & Thompson. Of the $1,000 so loaned by the First National Bank, the bankrupts on the same day paid $530 thereof to Gilbertson & Thompson to pay the $500 note secured by the chattel mortgage above mentioned. Between April and November 1, 1902, the Prussia Hardware Company sold the bankrupts upon open account

goods to the amount of $163. The creditman of that company testifies that before the goods were sold he learned from the commercial agencies that there were no incumbrances upon the bankrupts' stock, and thereupon extended the credit, which he would not have done had he known of the mortgage to Gilbertson & Thompson. Neither Gilbertson & Thompson nor the Crystal Lake State Bank made any statements or representations of any kind to the Prussia Hardware Company to induce that company to extend credit to the bankrupts; nor did they make any statements to the First National Bank, or do anything other than as above stated, to induce that bank to make the loan, or to purchase the notes against the bankrupts. The First National Bank and the Prussia Hardware Company proved their claims against the bankrupts, and petitioned the referee to give them priority of payment thereof from the bankrupts' estate over the claims of Gilbertson & Thompson and the Crystal Lake State Bank, which were also proved against the bankrupts' estate. The referee denied such petitions, and the First National Bank and the Prussia Hardware Company severally petition for review of such orders.

The contention of both petitioners is that the withholding of the mortgage and bill of sale from record by agreement with the bankrupts was in and of itself such fraud upon them as will preclude Gilbertson & Thompson and the Crystal Lake State Bank from sharing equally with the petitioners in the distribution of the bankrupts' estate; and the First National Bank further contends that the act of the cashier of Gilbertson & Thompson in inducing the bankrupt Brainard to conceal from it at the time it made the loan of $1,000 the existence of the chattel mortgage, and the actual concealment thereof by the bankrupts in pursuance of the request of the cashier of Gilbertson & Thompson to do so, was such active fraud upon the part of Gilbertson & Thompson and their cashier as will defeat the right of Gilbertson & Thompson to share equally with the First National Bank in the distribution of the bankrupts' estate. The withholding of the bill of sale to the Crystal Lake State Bank from record could have had no influence upon either petitioner in extending credit to the bankrupts, for that instrument was not made until after the petitioners had extended such credit. If Gilbertson & Thompson were claiming to hold the property or its proceeds under the mortgage to them, the failure to record the same would, under the bankruptcy law, be fatal to such claim; and, regardless of that law, it might preclude them from holding the property under such mortgage as against other creditors who had extended credit to the debtors in ignorance of such lien after it was made, and before it was recorded, even though it might have been recorded before such other creditors had acquired any liens upon or right to the property by attachment or otherwise. Blennerhassett v. Sherman, 105 U. S., at page 117, 26 L. Ed. 1080; Goll & Frank v. Miller, 87 Iowa, 426, 54 N. W. 443; Bacon v. Harris (C. C.) 62 Fed. 99. These authorities, however, only hold that the mortgage is invalid under the circumstances therein stated. The failure to record a mortgage does not render the debt secured thereby invalid, nor release the debtor therefrom, but only deprives the creditor of all rights under his mortgage as against

other creditors of the mortgagor. The debt still exists, and may be enforced against the debtor. Ordinarily, no obligation rests upon a creditor to notify the public or other creditors of a debt owing him by his debtor. And if he does nothing to induce others to extend credit to such debtor after he has taken a mortgage to secure his own debt, it would seem that by withholding the mortgage from record he would only forfeit his rights thereunder. Gilbertson & Thompson were not applied to for information as to the financial standing of the bankrupts by either of the petitioners, and they were not required to hunt them up and volunteer such information. As Gilbertson & Thompson have relinquished all rights under their mortgage, and are not now asserting any rights thereunder, it should not be held that, because they have withheld it from record, they may not enforce their debt secured thereby against their debtors. The mortgage to Gilbertson & Thompson was a preference under the bankruptcy act, and section 57g of that act (Bankr. Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) permits them to surrender such preference and prove the debt as an unsecured claim against the bankrupts' estate; and the mere withholding of the mortgage from record does not preclude them from doing this. If Gilbertson & Thompson had done nothing else but withhold the mortgage from record, as they had agreed to do with the bankrupts, the order of the referee would be approved upon both of the petitions for review.

It appears, however, from the testimony, as above stated, that the bankrupts procured from the First National Bank of Crystal Lake a loan of $1,000 upon a materially false statement in writing made by the bankrupts to that bank at the time, and upon the strength of which the loan was made; and the bank afterwards purchased notes made or indorsed by the bankrupts to the amount of $371; neither of which would it have done but for such false statement. Such false statement was made at the instance of the cashier or agent of Gilbertson & Thompson, and from the loan so procured from the First National Bank the bankrupts at once paid to Gilbertson & Thompson $530 to pay the $500 note and the interest thereon held by them against the bankrupts and secured by their mortgage. Gilbertson & Thompson thereby received that much of the fruits of the fraud so perpetrated upon the First National Bank, whereby it was led to believe that the bankrupts were not indebted to Gilbertson & Thompson. They must, therefore, be held to have participated in and to have profited by the fraud so practiced upon that bank, whereby it was induced to make its loan to, and purchase of the notes against, the bankrupts.

The bankruptcy law is founded and administered upon the principles of equity, and it would be clearly inequitable to permit a creditor who by a false and fraudulent statement, purposely made or caused to be made by him, had induced another to extend credit to his insolvent debtor, and had profited thereby, to share equally with the one whom he had thus defrauded in the distribution of the bankrupts' estate. Equity will not permit this to be done, but will postpone the claim of the creditor who has thus defrauded the other to the claim of the latter in the distribution of the bankrupts' estate. The conclusion is that upon the petition of the First National Bank of Crystal Lake for re-

view of the order of the referee such order must be reversed so far as it permits Gilbertson & Thompson to share equally with that bank in the distribution of the bankrupts' estate, but will be approved so far as it relates to the claim of the Crystal Lake State Bank.

In computing the dividend to be paid upon the claim of the First National Bank the debt of Gilbertson & Thompson will be excluded from the amount of the debts proved against the bankrupts' estate, and that claim is adjudged to be junior and inferior to the claim of the First National Bank of Crystal Lake.

Upon the petition of the Prussia Hardware Company, the order of the referee is approved. It is ordered accordingly.